Miner vs. Lane.

---

MINER, Respondent, vs. LANE, Appellant.

*January 12 — April 10, 1894.*

*Debtor and creditor: Land paid for by debtor but conveyed to another: Resulting trust: Priority.*

1. Where the consideration for land is paid by one person and the grant is made to another, and under secs. 2077, 2078, R. S., a trust results in favor of the creditors of the former, one of such creditors cannot, by proceeding in equity or otherwise, obtain a preference over the others.

2. The person paying the consideration in such a case acquires no title to the land, and judgments against him do not become liens thereon, nor do his heirs take any interest therein upon his death.

APPEAL from the Circuit Court for *Chippewa* County.

On June 5, 1883, one H. S. Allen, being then insolvent and indebted to the Uphams and James M. Smith, hereinafter mentioned, purchased of the Goddards and the Chisholms certain real estate in the city of Chippewa Falls, and paid the entire consideration therefor, and took the conveyance and title thereof by warranty deed in the name of the defendant Alice G. McRae, in fraud of his said creditors. On March 6, 1886, the said H. S. Allen died intestate in Chippewa county, leaving, him surviving, a widow, Mary Allen, sixty-eight years of age, and six children, to wit, Angie Lord, Hannah Buel, and Charles, John, Edward, and Lottie Allen, each of whom was twenty-one years of age prior to the commencement of this action. On December 3, 1891, Robert K. Boyd was appointed administrator of the estate of said H. S. Allen by the county court for Chippewa county, and thereupon qualified as such.

On September 27, 1877, the Uphams obtained a judgment in the circuit court for Eau Claire county against said H. S. Allen for $2,219.64, and the same was thereupon docketed in that county. On October 17, 1877, a transcript of said judgment was filed and docketed in Chippewa county. On October 24, 1877, execution was issued thereon, and returned wholly unsatisfied. On December 1, 1892, the condition of the title of said land became known to the plaintiff or his assignors. On January 11, 1893, by order of the circuit court for Chippewa county, an alias execution was issued upon said judgment against said land. On February 15, 1893, said judgment was, for value received, sold and assigned to the plaintiff.

On March 21, 1893, this action was commenced by the plaintiff against the said Alice G. McRae and her husband, Hector McRae, for the purpose of having said judgment declared a lien upon the land. On April 17, 1893, the said Alice G. answered, setting up some of the facts mentioned,

and others immaterial here, whereupon the plaintiff moved
for judgment upon the pleadings. On May 19, 1893, the
defendant *Addie L. Lane*, having been made a defendant
on leave, answered by way of defense and equitable counter-
claim, alleging most of the facts already stated, and also
that July 12, 1884, one James M. Smith obtained a judg-
ment in the circuit court for Chippewa county, against the
said H. S. Allen and one C. C. Lord, for $3,921,48; that the
same was docketed on the same day, and on the same day
execution was issued thereon, and on July 20, 1884, the
same was returned wholly unsatisfied; that the indebted-
ness upon which said judgment was so rendered in favor of
said James M. Smith was incurred and accrued prior to the
purchase of said real estate by the said H. S. Allen and the
conveyance thereof to the said Alice G. McRae, and that the
title to said premises was so taken in the name of the said
Alice G. McRae for the purpose of defrauding the said
James M. Smith and his assigns, including the said *Lane*,
and for the purpose of preventing said indebtedness and
judgment from being satisfied out of said real estate or the
moneys paid therefor; that December 26, 1885, the said
James M. Smith assigned said judgment to one L. C. Stan-
ley; that March 4, 1893, said Stanley assigned said judg-
ment to Lottie Allen; that March 14, 1893, said Lottie Allen
assigned said judgment to the defendant *Addie L. Lane;*
that May 10, 1893, execution was issued upon said last-
mentioned judgment by order of the circuit court for
Chippewa county, and the same was ·returned wholly un-
satisfied, May 22, 1893; and that during all of said time
the said C. C. Lord was wholly insolvent. Said answer
prayed that the plaintiff's application herein be denied, and
that the said Alice G. McRae be adjudged a trustee of said
land and real estate for the benefit of the said *Addie L.
Lane* and her said judgment, and that said trust be en-
forced, and the said judgment paid out of the proceeds of

Miner vs. Lane.

sale of said real estate, and that a receiver be appointed to carry such judgment into effect.

The plaintiff demurred to the counterclaim contained in said answer for insufficiency. Thereupon the said plaintiff and the said Alice G. and Hector C. McRae and the said *Addie L. Lane* stipulated in writing to submit the matter in controversy to the court on the record herein.

On August 3, 1893, the court found as matters of fact, in effect, the facts stated, and as conclusions of law, in effect, that the plaintiff is entitled to the relief demanded in his complaint, and that the deed from the Goddards and Chisholms to Alice G. McRae is void against both of said judgments, and that the said Alice G. McRae is a trustee of said lands and real estate — first, for the benefit of the plaintiff; and, secondly, for the benefit of the said defendant *Addie L. Lane*, subject to the prior rights of the plaintiff,— and that the plaintiff is entitled to have his said judgment paid and satisfied by a sale of said land, and after the same has been paid, and the costs thereof, from the receipts of the sale, any residue on said sale shall belong to the said *Addie L. Lane* sufficiently to pay her said judgment. From the judgment entered accordingly, the defendant *Addie L. Lane* appeals.

For the appellant there was a brief by *W. H. Stafford* and *H. P. Lane*, and oral argument by *Mr. Stafford.* They argued, among other things, that the action should have been brought under sec. 3832, R. S., by the administrator of Allen to recover the land for the benefit of all his creditors, or under sec. 3835, by one or more of the judgment creditors in behalf of all creditors. *Andrew v. Hinderman,* 71 Wis. 148; *Bate v. Graham,* 11 N. Y. 237; *German Bank v. Leyser,* 50 Wis. 258. Neither plaintiff's nor appellant's judgment was a lien upon the land. *Gilbert v. Stockman,* 81 Wis. 602; *Garfield v. Hatmaker,* 15 N. Y. 475. And the mere levy of an execution upon the land did not invest

the execution creditor with any right or title upon which to found a suit. *Harwood v. Underwood,* 28 Mich. 427. Neither of the parties could lawfully acquire a preference over the other. *Lichtenberg v. Herdtfelder,* 103 N. Y. 302; *Valley Lumber Co. v. Hogan,* 85 Wis. 366.

For the respondent there was a brief by *J. C. Gores* and *F. M. Miner,* and oral argument by *Mr. Gores.* As to the right of the respondent to priority over the appellant, they cited *Kellogg v. Coller,* 47 Wis. 649; *Bridgman v. McKissick,* 15 Iowa, 266.

The following opinion was filed January 30, 1894:

CASSODAY, J. It appears that at the time H. S. Allen purchased and paid for the land in question, and took a deed thereof from the Goddards and Chisholms, June 5, 1883, he was deeply insolvent; that he was then indebted, upon the judgment now owned by the plaintiff, in the sum of $2,219.64, and interest thereon from September 27, 1877, and was also indebted to one James M. Smith, upon which a judgment was recovered against him and another, July 12, 1884, for $3,921.48, and which judgment, with interest thereon from the time of its rendition, is now owned by the appellant. The facts bring the case squarely within the provisions of our statutes of uses and trusts. The grant from the Goddards and Chisholms to Mrs. McRae was made for a valuable consideration. Such consideration was paid therefor wholly by H. S. Allen at a time when he was hopelessly insolvent and was indebted upon both of the claims mentioned. These facts being so, "the title" to the land, by the imperative mandate of the statute (sec. 2077), "vested" in Mrs. McRae "as the alienee in such conveyance, subject only to the provisions of the next section," which declares that "every such conveyance shall be presumed fraudulent as against the *creditors* of the person paying the consideration, and when a fraudulent intent is

not disproved, a trust shall result *in favor of such creditors* to the extent that may be necessary to satisfy their just demands." Sec. 2078. These provisions of the statutes have frequently been considered by this court. *Kluender v. Fenske*, 53 Wis. 122; *Week v. Bosworth*, 61 Wis. 78; *Skinner v. James*, 69 Wis. 605; *Campbell v. Campbell*, 70 Wis. 311. In one of these cases it was said, in effect, that the purpose of these sections was to prevent an insolvent debtor from defrauding his creditors by purchasing and paying for lands with his own money and taking the title in the name of another; that by doing so the debtor took the risk of losing all claim to the land, and yet creating a resulting trust in favor of his creditors, enforceable by them.

The question here presented is whether one of the several creditors for whom the grantee named in the conveyance so holds the lands in trust can, by proceeding in equity or otherwise, obtain a preference over such other creditors. The sections of the statute cited were taken from New York, and hence the adjudications in that state since their enactment there may be instructive. In the leading case in that state, after holding that the resulting trusts of the common law had been explicitly abrogated in that state by statute, it was expressly held that " where a grant for a valuable consideration is made to one person, and the consideration therefor is paid by another, no interest, legal or equitable, vests in the person paying the consideration, to which a judgment and execution can attach; but the statute imposes upon the legal estate in the hands of the grantee in the conveyance *a pure trust* in favor of *the creditors, at the time,* of the person paying the consideration, *which can be enforced in equity.*" *Garfield v. Hatmaker*, 15 N. Y. 475. In *Wood v. Robinson*, 22 N. Y. 564, it was held that " where one advances the purchase money of land, the conveyance of which is taken to another, the statute impresses a trust upon the land in favor of *the ex-*

*isting creditors* of the person paying the purchase money, which *they* may enforce at any time by action in the nature of a bill in equity." It was there further held, in effect, that such statutory trust in favor of the creditors at the time of the transaction prevails over the equal equity and superior diligence of subsequent creditors. *McCartney v. Bostwick*, 32 N. Y. 53, is to the same effect. PORTER, J., speaking for the court in that case, said: "The distinction between this case and that of a judgment creditor under the general statute is very definite and obvious. There, the proceeding is to remove impediments in the way of reaching the *debtor's* property; here, it is to charge with a statutory lien the property of a *third party*, which the debtor never owned. There it is to exercise *auxiliary* jurisdiction in aid of legal process; here it is to enforce a trust of which the courts of law have no jurisdiction. That courts of equity possess original and inherent authority to decree the performance of obligations springing from valid and effectual trusts is too well settled to be considered anew as matter of grave judicial inquiry." In *Ocean Nat. Bank v. Olcott*, 46 N. Y. 17, CHURCH, C. J., speaking for the court, of the statutes in question said: "A trust results, not of the whole property, but sufficient only to satisfy the just claims of creditors; *not of one creditor only, but of all creditors.* Except as against creditors, the title is perfect in the grantee, and as against them it is perfect if the grantee can disprove a fraudulent intent. The rights of both creditors and grantee can only be properly adjusted and enforced in a proceeding in equity, where all interested persons can be made parties, and a sale and proper distribution of the property can be made." In *Underwood v. Sutcliffe*, 77 N. Y. 63, it was, in effect, held that a receiver appointed in proceedings supplementary to execution could not maintain an action to enforce the trust created by such statutes in favor of the creditors of the person paying the consideration for the land so conveyed to another, but that the

creditor could proceed directly to enforce the trust, as in the cases cited, after having exhausted his legal remedies. In the late case of *Brown v. Chubb*, 135 N. Y. 174, a father, in contemplation of insolvency and with intent to defraud his creditors, bought and paid for certain real estate, and took a conveyance thereof in the name of his daughter. The daughter subsequently bought up a judgment recovered against the father on a debt which accrued prior to such purchase, and upon which execution had been issued and returned unsatisfied. Thereupon other judgment creditors of the father brought an action to subject the land so held in trust by the daughter to payment of their judgment, and the trial court held that the land should be so charged in disregard of the rights of the daughter as judgment creditor. The general term modified the judgment so as to allow the daughter certain taxes and other expenses necessarily incurred; but the case was reversed in the court of last resort, and a new trial ordered, on the ground that the plaintiffs, by bringing their action, acquired no superior equities. It is true, the opinion in that case seems to go on the theory that, if the rule giving to the vigilant creditor the fruits of his vigilance was applicable, then the daughter, holding a judgment recovered prior to the plaintiffs' judgment, would have the superior right to the land; but we do not understand that the court so decided, and we should not hesitate to disapprove any decision to that effect.

Neither of the judgments in the case at bar ever became a lien upon the land, for the simple reason that the judgment debtor never owned the land. For the same reason the executions issued thereon did not, and could not, reach the land. The commencement of this action created no right to the land, but was a step to enforce a prior existing right. The rights of the respective parties in this case were created by the same statutes, and at the same moment of time, when the conveyance was taken in the name of Mrs. McRae under the circumstances mentioned. Much

was said on the argument as to how the death of H. S. Allen affected the questions presented. As the existence of the indebtedness of each party was conclusively determined by the rendition of the judgments, and the insolvency of the debtor was established by the return of executions unsatisfied, before death of H. S. Allen, it is not perceivable that such death had any effect. All the adjudications cited are to the effect that his heirs took no interest in the land upon his death. We conclude that the equitable rights of the plaintiff and appellant are equal, and each is entitled to his proportionate share of the property so held in trust.

Since no question has been raised as to any defect of parties, we perceive no reason why such rights may not be determined and satisfied by proper proceedings in this action under the general equity powers of the court. Our statute in this respect seems to be confirmatory of the common law, so far as the rights of existing judgment creditors are concerned, and declares that " whenever there shall be just reason to apprehend that the estate of a deceased person, as set forth in the inventory returned into court by the executor or administrator, may be insufficient to pay the debts of the testator or intestate, any one or more of the *judgment creditors or* creditors whose claims against the deceased shall have been *allowed* by the county court or commissioners appointed by said court, may, on behalf of all, bring an action in the circuit court to reach and subject to sale any real estate or interest therein, or other assets, not included in such inventory, *which, according to law, ought to be subjected to the payment of such debts.*" R. S. sec. 3835.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for further proceedings according to law.

A motion for a rehearing was denied April 10, 1894.