THE LEVEL LAND COMPANY No. 3 and another, Respondents, vs. SIVYER, imp., Appellant.

SAME, Respondents, vs. THE LAYTON ART GALLERY, imp., Appellant.

*December 2 — December 17, 1901.*

*Quieting title: Testing validity of liens: Action by judgment creditor: Parties: Bankruptcy: Pleading: Misjoinder of causes: Equity: Exhaustion of legal remedies: Prayer for excessive relief: Another action pending.*

1. A judgment creditor and the trustee in bankruptcy of the debtor, appointed in proceedings commenced after the rendition of the judgment, joined in an action under sec. 3186, Stats. 1898, to test the validity of claims and liens against land which was claimed to be subject to the lien of the judgment. It did not appear that

there were other creditors. *Held*, that the question whether the judgment lien remained in the creditor or had been transferred to the trustee by force of sec. 67c of the bankrupt act and an order of the court continuing it in force for the benefit of the estate, was not material upon demurrers to the complaint on the ground of another action pending, misjoinder of causes of action, and failure to state a cause of action.

2. Where the single primary right sought to be vindicated and enforced is the right to a judgment lien upon certain land, the complaint is not rendered multifarious because it seeks to set aside or minimize to the utmost other liens, apparently superior, and to accomplish that result the holders of such liens and the persons owing the debts which they secure are made parties.

3. One having a specific lien, by judgment or otherwise, may maintain suit to remove fraudulent or invalid obstacles standing in the way of its enforcement, without showing issue of an execution and return thereof unsatisfied.

4. In an action commenced in 1900 to subject a one-fourth interest in improved city real estate to the lien of a judgment for $8,000, it appeared from the complaint that in 1873 the entire property was worth $30,000; that the entire property was burdened by a life estate of unknown value; and that the debtor's interest was ostensibly subject to various liens amounting to $7,000; and it was alleged that the marshaling of the prior liens as prayed for was necessary in order to prevent "the total loss and destruction" of plaintiffs' interest. *Held*, that under a liberal construction of the pleading the inadequacy of the legal remedy to enforce plaintiffs' rights, and the necessity of aid from a court of equity to authoritatively define, before sale, the rights of the holders of such prior liens, were apparent; and that the complaint was not demurrable because it did not categorically assert the insufficiency in value of the real estate to satisfy plaintiffs' judgment.

5. A complaint is not rendered demurrable by a prayer for excessive relief.

6. An action to establish and enforce a judgment lien upon land as against other conflicting liens and claims is not barred by the pendency of a prior action to foreclose some only of such liens, in which an important part of the relief sought in the later action could not be obtained because the party setting up the bar of said prior action had prevented the joinder therein of the necessary parties.

APPEALS from orders of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed.*

Separate appeals from orders overruling the separate de-murrers of the two appellants. The complaint alleges the voluntary bankruptcy of Edwin H. Sivyer on October 17, 1899, and the appointment of the plaintiff *M. H. Brand* as his trustee, and the resulting transfer to him of all unex-empt property of Edwin H. Sivyer, including all thereto-fore transferred in fraud of his creditors; also that the plaint-iff *The Level Land Company* is the owner of a money judg-ment against Edwin H. Sivyer, recovered September 27, 1898, in the superior court of Milwaukee, for $7,863.37; that in 1890 the defendant Edwin H. Sivyer and his brother and sisters, *Byron G. Sivyer*, Julia Sivyer Thomas, and Annie J. Sivyer, were the owners in equal quarters of cer-tain real estate in the Seventh ward of the city of Milwau-kee, subject to a life estate in their mother, Dorothy Sivyer, such property being then worth $30,000, the title of all ex-cept Edwin H. Sivyer having remained unchanged to the present time (that property is hereafter referred to as the "Seventh ward property"); that on January 6, 1890, all of such owners, with their respective husbands or wives, signed a note and executed a mortgage on said property to the ap-pellant *The Layton Art Gallery* for $12,000, for five years, at six per cent. interest, which instruments represented an indebtedness of the defendant *Byron G. Sivyer* and George L. Thomas, payment of which, as against him, had been promised by the mother and sisters of Edwin H., who, with the full knowledge of the mortgagee, became liable thereon merely as surety, though in form as a joint and several maker, and under promise by the other makers to protect him against liability; that the whole of the principal and some interest is still due; that some time in 1892 or 1893 Edwin H. Sivyer engaged in the promotion of certain cor-porations, and misappropriated to himself large profits, suits for the recovery of which were threatened; that on April 17, 1894, Edwin H. Sivyer fraudulently, and with in-

tent to defraud his creditors and enable himself to retain the profits misappropriated as aforesaid, colluded and conspired with his wife, Annie Sivyer, and in pursuance of such intent conveyed to her, without consideration, his undivided one-fourth of said Seventh ward property; that at the same time he was the owner of certain premises, hereafter called the "Second ward property," occupied by him as a homestead, and that on April 27th he conveyed the same without consideration to his said wife, Annie Sivyer, for the purpose of placing the remainder of his property beyond the reach of his creditors, and improving or making more productive the said Second ward premises, and preventing their being seized by creditors after abandonment for homestead purposes; that that conveyance was withheld from record until April 3, 1896. It is alleged to have been merely colorable, upon a secret trust that she should hold it for him, and was made for the purpose of enabling him to use his means in the construction of a new building to be erected thereon, for which he had already obtained plans and negotiated erection, and of receiving and accumulating the rents and profits therefrom under the protection of his wife's name; that the property is 150 feet in depth, with a frontage of $72\frac{1}{2}$ feet; that he at once moved the dwelling house to the back end, and erected on the front end, at a cost of about $20,000, nine flats, of which the annual rental, of which he has ever since been in receipt, is about $3,300; that the portion of the premises upon which the rented flats stand is easily severable from that portion on which is situated the dwelling house, still occupied by Edwin H. Sivyer and his wife as a homestead; that on July 9, 1896, Annie Sivyer, wife of Edwin H., borrowed and received from Henry Herman $2,500, for which she gave her note, payable in two years, with seven per cent. interest, secured by mortgage executed by her and her husband upon both the Second ward property and the undivided quarter of the Seventh ward

property, which mortgage on February 19, 1900, was transferred to the defendant *Byron G. Sivyer.*

It is then alleged that in March, 1897, plaintiff *The Level Land Company* commenced its action to recover from E. H. Sivyer the profits misappropriated by him as its promoter in August, 1892, and on September 27, 1898, recovered the judgment hereinbefore mentioned; that, on the morning of the day on which the judgment was entered, a mortgage for $1,490 upon the undivided quarter of the Seventh ward property was executed to *Byron G. Sivyer* by Annie and E. H. Sivyer to secure her note of even date; that *Byron G.* at the time of receiving said note and mortgage had full knowledge of the suit of *The Level Land Company* as aforesaid; that the conveyance of the Seventh ward property to Annie Sivyer from her husband was without consideration and void as to his creditors; and that he accepted said note and mortgage with a view to aiding and abetting Edwin H. in the fraudulent purpose of defrauding, hindering, and delaying his creditors, and of carrying out the fraudulent conspiracy and purpose for which the conveyance of the Seventh ward property was originally made to said Annie. Said mortgage is alleged to have been at all times fraudulent and void as against the creditors of Edwin H. and as against these plaintiffs.

It is alleged that in January, 1899, *The Level Land Company,* after the issue and return unsatisfied of execution, commenced an action against Edwin H. Sivyer and his wife in the nature of a creditors' bill, alleging fraud in the transfers from Edwin H. Sivyer to his wife, *lis pendens* being filed on January 31, 1899, and on June 23, 1899, recovered a judgment setting aside and vacating the conveyance of the undivided one-fourth of the Seventh ward property as in fraud of the rights of that plaintiff as a creditor of Edwin H., but refusing to disturb the conveyance of the Second ward property, all of which was well known to *Byron G.* before

taking the assignment of the Herman mortgage, as above
stated; that after the adjudication of bankruptcy, October
17, 1899, to wit, March 31, 1900, an order was entered in
bankruptcy proceedings to the effect that all rights obtained
by *The Level Land Company* by the judgment of June 23,
1899, be preserved for the benefit of the bankrupt estate,
subject to its lien, and said judgment remains in full force;
that on March 12, 1900, the appellant *Byron G. Sivyer* com-
menced an action in the circuit court for Milwaukee county
against Annie Sivyer, Edwin H. Sivyer, and *M. H. Brand*,
trustee, to foreclose said Herman mortgage, and also to
foreclose said $1,490 mortgage, as against the Seventh ward
property, wholly omitting the Second ward property, which
action is still pending; that the plaintiff *Brand*, as trustee,
appeared and answered, and made a motion to have joined
as defendants to that action all of the other defendants in
this action, being the other Sivyer children and *The Layton
Art Gallery;* that the plaintiff in that action, *Byron G. Siv-
yer*, resisted said motion, and it was denied, except as to
*The Level Land Company*, without prejudice.

The complaint then alleges that *Byron G.* at the time of
purchasing the Herman mortgage had knowledge of the
judgments above mentioned in the bankruptcy proceedings,
and that therein the Seventh ward property was scheduled
by Edwin H. Sivyer as an asset, but nevertheless purchased
said mortgage for the purpose of foreclosing the same against
said undivided one-fourth of the Seventh ward premises,
and of relieving and releasing said Second ward property,
thus aiding and abetting said Edwin H. and Annie in de-
frauding the creditors of Edwin H., and with the view of
acquiring by foreclosure the title to said one-fourth share
in the Seventh ward property, while the same was charged
of record with the payment of said $12,000 mortgage, and
in this manner securing such title at far less than its value,
which acts were fraudulent and void as against these plaint-

iffs and the creditors of Edwin H. Sivyer. It is also alleged that the plaintiff *Brand,* as trustee, is the owner of the said one-fourth of the Seventh ward property, and *The Level Land Company* has a valid lien thereon to the amount and extent of its judgment, and that they, as against the *Layton Art Gallery* mortgage, and said Henry Herman mortgage, became and are subrogated to the rights of Edwin H. Sivyer to compel the payment and discharge of said mortgages by the parties primarily liable therefor, to wit, *Byron G. Sivyer,* George L. Thomas, Julia Sivyer Thomas, Dorothy Sivyer, and Annie J. Sivyer, as to the $12,000 indebtedness, and against Annie Sivyer, Edwin's wife, to compel payment of the $2,500 indebtedness upon the Herman mortgage, for which she is alleged to be primarily liable, which subrogation is not only to require payment by these respective principal obligors, but to require said mortgagees to first exhaust the properties of such principal debtors covered thereby, which are respectively alleged to be sufficient to satisfy the mortgage debts; that the plaintiffs have duly notified *The Layton Art Gallery* of their claims, and of their inability to pay that mortgage, but of their ability to find a purchaser for it upon assignment, and have requested *The Layton Art Gallery* to either assign to such purchaser or to proceed to foreclose, both of which it has refused to do; that they offer to pay and discharge any deficiency which may exist after appropriating and exhausting the shares of those primarily liable.

It is also alleged that, before a judicial sale of Edwin H. Sivyer's undivided quarter of said Seventh ward property, it is necessary, in order to prevent the total loss and destruction of plaintiffs' interests therein, that the respective interests, claims, and priorities, and the primary liability of each of the parties mentioned in relation thereto, be ascertained and determined, and that the amount due upon the *Layton Art Gallery* mortgage, and the parties and property pri-

marily liable therefor, be ascertained and determined, and likewise that the amount due upon the Henry Herman mortgage indebtness, and the persons and property primarily liable therefor, be ascertained and determined. It is also alleged that the $1,490 mortgage is fraudulent and void, but, if valid, that Annie Sivyer is liable therefor and should be compelled to satisfy it.

The prayer is for substantially the relief above indicated, namely, that *The Layton Art Gallery* proceed at once to foreclose its mortgage and to exhaust all of the other three-fourths of the Seventh ward property before Edwin H.'s share, and that its lien upon that share be adjudged to be limited to such amount as may remain after exhausting the other threefourths; that the $1,490 mortgage to *Byron G. Sivyer* be adjudged void; that the transfer to him of the Herman mortgage be adjudged fraudulent and void as against the plaintiffs, or that the moneys expended by Edwin H. upon the Second ward property subsequent to its transfer to his wife be ascertained and determined, and be declared a lien thereon, and the premises be sold to satisfy such lien; that *Byron G. Sivyer* be restrained and enjoined from making a sale of any part of the Seventh ward premises under the foreclosure of the two mortgages held by him, and from proceeding further in his said foreclosure action until he shall pay and discharge that part of the *Layton Art Gallery* mortgage which, in equity and good conscience, he is bound to pay, as against those who have succeeded to the rights and equities of Edwin H.; also that a receiver be appointed to collect rents and profits and preserve the property pending the litigation.

To this complaint *Byron G. Sivyer* demurred on three grounds: first, that there is another action pending between the same parties for the same cause; second, that several causes of action have been improperly united; third, that the complaint does not state facts sufficient to constitute

a cause of action. *The Layton Art Gallery* separately demurred, alleging only the second and third grounds above stated. Orders overruling the respective demurrers being entered, said appellants separately appealed therefrom.

For the appellant *Sivyer* there was a brief by *Dorr & Gregory*, and oral argument by *Thomas H. Dorr*.

For the appellant *The Layton Art Gallery* there was a brief by *Fish, Cary, Upham & Black*, and oral argument by *William E. Black*.

*C. T. Hickox*, for the respondents.

Dodge, J. Some confusion seems to result from the joinder of the trustee in bankruptcy with the judgment creditor as plaintiffs, but we think unnecessarily. That joinder was probably due to uncertainty whether the judgment lien established in favor of *The Level Land Company* by the decree of June 23, 1899, still remained in it, or had been transferred to the trustee by force of sec. 67c of the bankrupt act, and by the order continuing it in force for the benefit of the estate. That uncertainty need not trouble us on these demurrers, however; for that lien certainly exists unimpaired either in one plaintiff or the other, or both. Nor can we discover that the rights existing in *The Level Land Company* before the bankruptcy are at all enlarged by the joinder of the trustee. The latter's rights to attack fraudulent conveyance or concealment of property are only those of the creditors whom he represents. Sec. 70e of the bankruptcy act only authorizes that "the trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided." The complaint does not allege the existence of any creditor, other than this plaintiff; whose claims existed prior to 1894 or to 1896, or who for any reason could have attacked the conveyances of Edwin H. Sivyer for fraud. It seems clear, therefore, that the rights of the trustee are confined to the

same limits which rested upon those of *The Level Land Company*. We must therefore proceed to examine the sufficiency of the complaint from the same standpoint as if bankruptcy had not intervened and *The Level Land Company* were suing alone. Whether some variance in the method of granting relief may result from the existence and presence of the trustee is a question to arise in framing the decree, but not now.

1. The first common ground of demurrer is that several causes of action are improperly united. A general rule governing such objections as this is that a complaint in equity is not multifarious which presents but one primary right for enforcement, or one subject of action for adjudication, though it may pray for many and various forms of relief, all germane to that single subject of the action, or to the vindication of that primary right. *Bassett v. Warner*, 23 Wis. 673; *Gager v. Bank of Edgerton*, 101 Wis. 593; *Zinc C. Co. v. First Nat. Bank*, 103 Wis. 125, 139. The complaint here sets out a single, salient, primary right for vindication, namely, the right to enforce its judgment lien against the undivided quarter interest of its debtor, Edwin H. Sivyer, in the Seventh ward property, and the vindication and enforcement of that right is the paramount and all-pervading purpose of the action and relief sought. Such a single and primary cause of action is not rendered multifarious because the consideration and control of the claims of many different persons, or the exercise of many forms of equitable power, is deemed necessary to accomplish that main purpose, and is invoked. To fully effect that general result, it is deemed by the pleader necessary that a variety of liens apparently superior to his should be brushed aside or minimized to the utmost, and, to accomplish that result, that the holders of such liens, and also the persons who owe the debts which they secure, should be parties, in order that the decree may bind them. Whether all of the forms of re-

lief prayed are properly grantable is not material to the present question. They are obviously all prayed for as ancillary to the single paramount purpose of the suit. They do not constitute several causes of action, and there is no misjoinder.

2. A second ground of demurrer asserted by both appellants is that the complaint does not state facts sufficient to constitute a cause of action, and, to some extent, both demurrants make the same contentions in support of their pleading. Some of these contentions are based on cases decided with reference to general powers and methods of courts of equity independently of any statute, and we may, in large measure, dispose of them by the consideration that plaintiffs plant their cause of action squarely upon sec. 3186, Stats. 1898, which, while not in any wise restricting the established jurisdiction of equity to quiet title, does authorize the maintenance of what is substantially a *quia timet* suit independently of some of the obstacles formerly existing thereto. The language of that statute is general and comprehensive:

"Any person not having such title or possession, but being the owner and holder of any lien or incumbrance on land, shall also have the same right of action as the owner in fee to test the legality and validity of any other claim, lien or incumbrance on such land or any part thereof."

The complaint sets forth ownership of a lien by plaintiffs upon the interest of Edwin H. Sivyer in the Seventh ward property, and absence of possession. It alleges other claims and incumbrances thereon asserted by both the demurrant defendants, and prays, among other relief, that the legality and validity of such claims may be tested and adjudged. This summary seems to leave no room to doubt that *prima facie* facts constituting a cause of action under this statute are stated. True, the allegations and the prayer for relief go further, but a sufficient complaint is not rendered demurrable by such additions.

One answer made to this *prima facie* sufficiency is that the complaint does not show that plain and adequate legal remedies have been exhausted. In support of that position, appellants invoke the rule settled by decisions of courts of equity, and now declared by statute (sec. 3029, Stats. 1898),— that issue and *nulla bona* return of execution are essential prerequisites to action by a judgment creditor to set aside fraudulent conveyances. This court ought not to be required again to point out the limitations upon that rule so clearly explained in *Gilbert v. Stockman*, 81 Wis. 602, and *French L. Co. v. Theriault*, 107 Wis. 627. The holder of a judgment which is not yet a lien, in order to set aside fraudulent conveyances so that a lien may attach, must generally allege and show issue and unsatisfied return of an execution (*Mueller v. Bruss, ante*, p. 406); but one having a specific lien, by judgment or otherwise, may maintain suit to remove fraudulent or invalid obstacles standing in the way of its enforcement without such preliminary.

Appellants further argue, however, that, apart from the technical necessity for return of execution unsatisfied, courts of equity will not take jurisdiction when full and adequate legal remedy exists. This general principle is unassailable. It rests on the very reason for the existence of the great part of equity jurisdiction, namely, the demand for relief against the imperfections and nonelasticity of common-law remedies. Of course, the peculiar weapons of a court of equity will not be needlessly wielded to enforce rights to which the methods of the common-law courts are entirely adequate. But does the complaint disclose such legal remedy? The only one suggested by appellants is an execution sale of the undivided quarter which is confessedly subject thereto, and which, so far as the allegations of the complaint go, appellants assert, may sell for enough to satisfy plaintiffs' lien. If the complaint does not negative this last fact, we should have little doubt that it was insufficient.

If plaintiffs can, by issue of execution and statutory sale of the interest in this land on which their lien rests, satisfy their judgment, they should be left to do so. It must be confessed that the complaint does not categorically assert the insufficiency in value of this real estate to satisfy plaintiffs' judgment, but it is obviously framed upon that idea and, we think, may be held to aver it inferentially, at least, by not unduly strenuous exercise of the liberality which sec. 2668, Stats. 1898, commands us to extend to pleadings. It appears that in 1873 the entire property was appraised at $30,000, or $7,500 for Edwin's quarter. We can hardly indulge in presumption that the land has advanced in value more than buildings have deteriorated. This $7,500 is shown to be burdened by a life estate of unknown value; a mortgage of $12,000, of which at least a proportionate quarter, $3,000, is ostensibly a claim against this interest; also two other mortgages, $2,500 and $1,490; viz. a total of $7,000 and some interest, besides the life estate, while plaintiffs' judgment is about $8,000. Inadequacy for all these demands is apparent. Further, the complaint alleges that the ascertainment and marshaling of prior liens as prayed is necessary to prevent the "total loss and destruction" of plaintiffs' interests. If, as we conclude, the complaint alleges the inadequacy in value of the Seventh ward property to sell, subject to the other ostensible liens, for enough to satisfy plaintiffs' judgment, it is absurd to say that his legal remedy is adequate and complete, if it appears that such sale would be more productive but for fraudulent and inequitable prior incumbrances, which can be removed only by the means of equitable procedure. Inadequacy of the legal remedy to enforce plaintiffs' right is apparent, as also is the necessity of aid from a court of equity to authoritatively define the rights of the holders of the ostensible prior liens before plaintiffs offer the property for sale upon their lien.

Both appellants discuss at considerable length the limita-

tions upon the right of one whose property is pledged to se-
cure a liability of suretyship to seek exoneration, either in
whole or in part, against the principal debtor and against
the creditor. That question is not essential to a decision
upon the sufficiency of this complaint. It goes only to one
of the methods suggested by which the court shall or may
render effectual its determination of the validity and amount
of appellants' liens on the quarter interest in the Seventh
ward property. The right of a surety to obtain exoneration
of himself or his property by suit in equity before payment
of the debt is generally well established. *Dobie v. Fidelity
& C. Co.* 95 Wis. 540; *Momsen v. Noyes,* 105 Wis. 565; *Ellis
v. S. W. L. Co.* 108 Wis. 313; Brandt, Suretyship & G. (2d
ed.), § 223; *Irick v. Black,* 17 N. J. Eq. 189. The right to
use the remedies which belong to the creditor, as by fore-
closing his mortgage, is another suggested remedy. *Moore
v. Topliff,* 107 Ill. 241. Again, the equitable process of mar-
shaling securities is often available, whereby one having a
right against only one fund may require a prior claimant
having rights against that fund and another to exhaust the
other. 3 Pomeroy, Eq. Jur. § 1413; *White v. Polleys,* 20
Wis. 503. Whether the court shall adopt one or more of
these principles or methods in order to protect the equitable
rights of the plaintiffs is, however, a question of detail, not
affecting the sufficiency of the complaint to state some cause
of action.

*The Layton Art Gallery,* appellant, complains that there
is no offer to pay its expenses of foreclosure. This might
well be a valid objection against a bill merely seeking to
compel it to foreclose, for the surety's right does not extend
to imposing upon an innocent creditor any additional bur-
den of expense or delay. But such is not the only relief
prayed, and, upon familiar authority, a complaint is not ren-
dered demurrable by prayer for excessive recovery. If the
court shall ultimately decide that foreclosure of the *Layton*

*Art Gallery* mortgage is a necessary or proper step in working out the equities between the parties, it can impose suitable indemnity against expense as a condition.

3. One ground of demurrer, asserted only by *Byron G. Sivyer*, remains to be considered: that is, that another action is pending between the same parties, for the same cause. That action, as described in the complaint, is one to foreclose the two mortgages of $2,500 and $1,490 owned by *Byron* against the undivided quarter of the Seventh ward property, and to which neither *The Layton Art Gallery*, Dorothy Sivyer, Clara Sivyer, George L. Thomas, Julia Sivyer Thomas, nor Annie J. Sivyer are parties; their absence being due to *Byron's* resistance of efforts by these plaintiffs to bring them in. It needs no argument to establish that such action cannot involve the most important part of the cause of action here presented, namely, the testing and adjudication of the lien of the *Layton Art Gallery* mortgage, which cannot be effectively done, so as to fully bind all parties in interest, without the presence before the court of all the parties to this action. It does not appear by the complaint either that such other action is between the same parties or is for the same cause. If it might otherwise be urged that it is potentially between the same parties, because by counterclaim it would be possible to join them, that contention does not lie in the mouth of the demurrant *Byron*, because he is alleged to have prevented such action, and cannot now consistently urge its possibility. Whether some part of the relief prayed here is so involved in that other action as to be beyond reach of the court in this is a question not material to the present demurrer. Some of the relief prayed certainly is not involved therein.

We are satisfied that the demurrers of both the appellants were properly overruled.

*By the Court.*— Both of the orders appealed from are affirmed. Respondents will recover costs only as upon a single appeal.