STATE BANK OF LA CROSSE, Respondent, vs. BIENFANG, imp., Appellant.

*October 18—November 5, 1907.*

*Appeal and error: Findings, when disturbed: Fraudulent convey-*
*ances: Grant to one person, consideration paid by another:*
*Statutes: Construction: Judgments irresponsive to facts proved:*
*Land contracts: Vesting of title: Executions: Pleadings: Suf-*
*ficiency: Remedies of creditors: Action to establish a trust:*
*Procedure.*

1. Findings as to a debtor's fraudulent intent in procuring convey-
   ance of described real estate direct to a third party and that
   party's participation, and that the conveyance was made and
   taken in secret trust for the debtor, are *held* not to be against
   the clear preponderance of the evidence.
2. Under sec. 2320, Stats. (1898)—providing for the case of an at-
   tempted conveyance by a debtor to a third person, and declar-
   ing that when such conveyance is fraudulent it shall be void;
   that, at least as to attacking creditors, the title still remains
   within the reach of any specific liens unaffected by the convey-
   ance, and that the right of each creditor acquiring such lien is
   the same as if the conveyance had not been made,—an execu-
   tion when levied becomes a lien, and a sale thereunder conveys
   all the interest in the premises which the debtor would have
   had in the absence of such conveyance, and hence the only aid
   needed from a court of equity is in removing the apparent
   cloud caused by the fraudulent conveyance.
3. In case of conveyances falling under sec. 2078, Stats. (1898)—
   providing that a grant to one person upon a valuable consid-
   eration paid by another vests the title completely in the person
   named as grantee, and that no trust results in favor of the

person paying the consideration, except that "such conveyance shall be presumed fraudulent as against the creditors of the person paying the consideration and, when a fraudulent intent is not disproved, a trust shall result in favor of such creditors to the extent that may be necessary to satisfy their just demands,"—no title, legal or equitable, vests in the debtor, and no lien upon the property can be acquired by the docketing of judgment or levying of attachment or execution, nor can any interest be conveyed by an execution sale.

4. Under said sec. 2078 the debtor owns nothing, but the grantee holds the entire title as a trustee in favor of the creditors existing at the time of the conveyance, and in favor of all of them, so that none can acquire preference over any other.

5. Under said sec. 2078 the right of such creditors is not against the land, but, at the suit of all or any one for all, to charge the grantee with a trust, and that only to the extent necessary to satisfy their just demands.

6. In an action to subject real estate to the lien of his judgment, brought by a judgment creditor whose execution had been returned unsatisfied, in behalf of himself and all other judgment creditors of the debtor whose executions should have been returned unsatisfied and who should thereafter come in and seek relief by contributing to the expense of the action, the judgment declared plaintiff's judgment a lien upon the land and authorized sale of it on execution. The findings, and more clearly the evidence, showed that the judgment debtor never owned the land and never conveyed it to B., who held the title, but, on the contrary, that B.'s grantor conveyed the land to B. for a valuable consideration paid by the judgment debtor; that the fraudulent intent against creditors declared by sec. 2078, Stats. (1898), had not been effectively disproved; that the value of the land was largely in excess of plaintiff's claim; and that there were other creditors of the judgment debtor who were such at the time of the conveyance. *Held*, that the judgment was wholly irresponsive to the facts established, and erroneous.

7. In such case the conclusion that the transaction whereby B. acquired title fell within sec. 2078, Stats. (1898), was not averted by the fact that before the conveyance the judgment debtor had obtained the right to purchase in his own name by a written agreement.

[8. *It seems* that under an ordinary land contract which contemplates a presently executed sale, although the payment of part of the consideration and the actual conveyance may still be executory, or where some portion of the purchase price is paid and possession delivered, there arises at least an equitable title

upon which the lien of a judgment may rest, and which may be reached by an execution after it has been fraudulently conveyed to a third person either by the debtor or by a colorable conveyance from another.]

9. A mere contract to sell and purchase at some time in the future, in no wise executed either by the payment of any of the purchase price or by delivery of possession, does not vest any title in the proposed purchaser which can be subject to the lien of a judgment or be reached by execution after it has been conveyed in fraud of creditors.

10. Such contract at most gives the vendee a right of action upon his contract, which does not reach the dignity of an interest in the property, legal or equitable, until he performs at least in part.

11. Whether a written agreement is to be deemed one of present sale, or merely for sale in the future, depends upon the intent of the parties, which must be gleaned from the instrument itself, and, in case of ambiguity, from any surrounding conduct or circumstances.

12. A contract relating to lands (wherein by its terms A. does not presently sell, but agrees to sell at some time within thirty days, and B. does not declare that he purchases, but that at some time within thirty days, upon conveyance, he will pay the proposed purchase price, and under which B. took no possession until some four days after the agreement for purchase was made; which contract was in some parts abandoned by both parties thereto, and, upon the day of the actual conveyance, the minds of the parties met upon new terms of sale, whereby, in consideration of B.'s payment, conveyance was made to C.) is plainly prospective in its terms, and, when the conveyance was actually made to C., the deed in no sense conveyed to C. any interest in the lands, legal or equitable, belonging to B., but did convey A.'s complete title to C. for a consideration wholly paid by B.

13. In an action by a judgment creditor to reach real estate alleged to have been conveyed in fraud of creditors, the complaint, while expressly praying that the conveyance be set aside and the plaintiff's judgment decreed a lien upon the property, also contained allegations of all the facts necessary to establish, under sec. 2078, Stats. (1898), a trust in B. in favor of the plaintiff, together with all other creditors existing at the date of the conveyance, and declared that the suit was brought in behalf of plaintiff and all other creditors, although it attempted to limit the benefits to accrue to other judgment creditors, and prayed for such other and further relief as might be just and equitable. There was *prima facie* proof that the judgment

debtor had no property within the reach of execution. *Held*, that the action was one *in personam* against B. (a resident of the county of the rendition of the judgment) to charge her with a trust, and hence it was not necessary, in order to reach the land, that execution issue to the county of its *situs*.

14. In such case, the complaint not having been assailed for insufficiency except by demurrer *ore tenus*, it was sufficient to support such equitable relief as might fairly result from the facts alleged and established.

15. In such case under the facts, stated in the opinion, it was *held* that plaintiff was entitled to a judgment declaring as against B. a trust in favor of all creditors existing at the time of the conveyance, including plaintiff.

16. In such case the court should have proceeded to ascertain who those creditors were, based upon an adequately published notice limiting a reasonable time within which they might establish the amount of their claims, and, as a condition of being allowed to share in the fruits of the litigation, require each to pay to the plaintiff his proportionate share of the expenses which the plaintiff had reasonably incurred in uncovering and realizing the fund.

17. In such case, when the entire amount of such debts has been ascertained, B., by virtue of sec. 2078, Stats. (1898), has the right to perform the trust by paying them, and upon default the court should provide for the sequestration of the land and sale thereof by receiver or other proper method, and apportion the amount so realized among the creditors who have become parties to the action.

APPEAL from a judgment of the circuit court for La Crosse county: J. J. FRUIT, Circuit Judge. *Reversed*.

On March 6, 1905, the defendant Schallert, being indebted to the plaintiff as indorser or guarantor on a note of the Market Grocery Company, of which he was the principal owner, entered into an agreement to purchase from one Bunting certain real estate with certain personal property thereon for the sum of $7,100, to be paid: $3,000 thereof by transferring a note due to Schallert from the Central Electric Company; $2,900 by transferring Schallert's twenty-nine shares of stock in said Market Grocery Company; $200 by transferring an undivided half interest in an automobile;

and $1,000 by assuming a mortgage on the land. About March 10th the land was conveyed by Bunting, at the request of Schallert, to the defendant *Bienfang,* and the former was paid the twenty-nine shares of stock in the Market Grocery Company and the half interest in the automobile, but, instead of the $3,000 note of the Central Electric Company, he was paid cash $1,451, and a second mortgage of $1,300 on the land was assumed by the grantee in addition to the $1,000 originally agreed upon. The $1,451 of cash was realized by Schallert by selling to the bank the $3,000 note of the Central Electric Company, which was payable to him, but which, it was claimed by the defendants, was for money of the defendant *Bienfang,* loaned by Schallert to said Central Electric Company with her approval, and for which Schallert had given her his own note. There is no evidence as to any transfer of the personal property, except that it remained upon the farm and was in the mixed possession of both the defendants, who seemed to have mutually exercised possession over the farm after the deed. On July 7, 1905, plaintiff recovered judgment in La Crosse county, where both the defendants resided, against Schallert and the Market Grocery Company, and on July 27th execution was issued and returned unsatisfied. This action, wherein the summons was served on defendant *Bienfang* July 29, 1905, and on the defendant Schallert July 31, 1905, was brought on behalf of the plaintiff "and all other judgment creditors of said defendant Schallert whose executions shall have been returned unsatisfied, and who shall hereafter come in and seek relief by contributing to bear the expense of this action;" the prayer being that the conveyance from Bunting to *Bienfang* shall be adjudged void against the creditors of said Schallert, and particularly this plaintiff, that plaintiff's judgment be adjudged to be a lien upon the premises superior to the conveyance or to any conveyance or incumbrance at the commencement of the suit, and that said judgment be

satisfied out of said property; also for general relief.   An incorrect transcript of the judgment was filed with the clerk of the circuit court for Vernon county, where the Bunting land was situated, on July 30th.   The court found, in addition to the facts above stated, that the whole consideration for the conveyance from Bunting was paid by Schallert, and such conveyance was taken in secret trust for him and with intent on his part to hinder, delay, and defraud his creditors, which intent was known to, and participated in by, *Bienfang,* who acted in collusion with said Schallert to carry out the same; whereupon judgment was entered that the conveyance of the land to *Bienfang* be set aside as against the plaintiff, and that it be at liberty to proceed upon execution upon its judgment and to levy upon and sell said described land as the property of Schallert, and that said *Bienfang* deliver to the sheriff all property transferred by Bunting to either of said defendants, or subsequently transferred by Schallert to her, to be sold by said sheriff upon execution, from which judgment the defendant *Bienfang* appeals.

*Geo. W. Bunge* and *C. W. Graves,* for the appellant.

*C. L. Hood,* for the respondent.

DODGE, J.   While the findings as to Schallert's fraudulent intent in procuring conveyance of the described real estate direct to the appellant, *Bienfang,* and her participation, that the entire consideration therefor was paid by the defendant Schallert, and that said conveyance was made and taken in secret trust for said Schallert, are vigorously assailed, we find, upon examination of the evidence, no clear preponderance against any of them, and therefore must proceed to consider the case upon the assumption that such facts exist.   We may say, however, that we find no evidence whatever of any transfer to appellant, *Bienfang,* of the small amount of personal property mentioned in the land contract, and must therefore conclude that the finding that such transfer was made is unsupported.

Both the complaint and the judgment evince confusion between the rights of the parties which would result in a case arising under sec. 2320, Stats. (1898), and that arising under sec. 2078, Stats. (1898). The first mentioned of these sections provides for the case of an attempted conveyance by a debtor to a third person, and declares that when such conveyance is fraudulent it shall be void; that is to say, as to attacking creditors at least, that the title still remains within reach of any specific liens unaffected by the conveyance, and the right of each creditor acquiring such lien is the same as if the conveyance had not been made. An execution when levied becomes a lien, and sale thereunder conveys all the interest in the premises which the debtor would have had in absence of such conveyance. Hence the only aid needed from a court of equity is in removing the apparent cloud caused by the fraudulent conveyance. *Gilbert v. Stockman,* 81 Wis. 602, 51 N. W. 1076, 52 N. W. 1045; *French L. Co. v. Theriault,* 107 Wis. 627, 83 N. W. 927. On the other hand, secs. 2077, 2078, Stats. (1898), provide that a grant to one person upon a valuable consideration paid by another vests the title completely in the person named as grantee, and no trust results in favor of the person paying the consideration, except that "such conveyance shall be presumed fraudulent as against the creditors of the person paying the consideration and, when a fraudulent intent is not disproved, a trust shall result in favor of such creditors to the extent that may be necessary to satisfy their just demands." In the case of conveyances falling under this section, no title, legal or equitable, vests in the debtor, and no lien upon the property can be acquired by the docketing of judgment or levying of attachment or execution, nor can any interest be conveyed by an execution sale. The debtor owns nothing, but the grantee holds the entire title as a trustee in favor of the creditors existing at the time of that conveyance, and in favor of all of them, so that none can acquire preference over any other. The right of such creditors is not against the

land, but, at the suit of all or any one for all, to charge the grantee with a trust, and that only to the extent that may be necessary to satisfy their just demands. *Miner v. Lane,* 87 Wis. 348, 355, 57 N. W. 1105; *Blackburn v. Lake S. T. Co.* 90 Wis. 362, 365, 63 N. W. 289; *Allen v. McRae,* 91 Wis. 226, 230, 64 N. W. 889; *Brinker v. Brinker,* 105 Wis. 231, 81 N. W. 402. The judgment appealed from is substantially such as would be warranted in case of a fraudulent conveyance by Schallert himself. It declares plaintiff's judgment a lien upon the land and authorizes sale of it on execution, and such was evidently the relief to which plaintiff considered itself entitled in framing its complaint. The findings, however, and more clearly the evidence, negative any such situation. Schallert never owned the land and never conveyed it to *Bienfang,* but, on the contrary, Bunting did grant and convey the land to *Bienfang* for a valuable consideration entirely paid by the debtor, and the presumption of a fraudulent intent against creditors declared by sec. 2078 has not been effectively disproved. Further, so far as the evidence goes, it indicates that the value of the real estate thus conveyed to *Bienfang* is largely in excess of plaintiff's claim, and it also indicates, though perhaps not with great certainty, that there are other creditors of Schallert who were such at the time of the conveyance. Hence the decree adjudging the conveyance to *Bienfang* void, authorizing the sheriff to sell the property upon execution, and declaring plaintiff's judgment a lien thereon, thus giving it preference over any other creditors without ascertaining definitely the fact of their existence or nonexistence, is wholly irresponsive to the facts established, and erroneous.

The conclusion that the transaction between Bunting, Schallert, and *Bienfang* falls within sec. 2078, Stats. (1898), is not averted by the fact that before the conveyance Schallert had obtained the right to purchase in his own name by written agreement. It is probably true that, under an ordinary

land contract which contemplates a presently executed sale, although the payment of part of the consideration and the actual conveyance may still be executory, and especially where some portion of the purchase price is paid and possession delivered to the purchaser, there arises at least an equitable title upon which the lien of a judgment might rest, and which might be reached by an execution after it had been fraudulently conveyed to a third person either by the debtor or by a colorable conveyance from another. *Van Camp v. Peerenboom,* 14 Wis. 65; *Bartz v. Paff,* 95 Wis. 95, 100, 69 N. W. 297; *Foster v. Rowe,* 132 Wis. 268, 111 N. W. 688. The authorities are quite unanimous, however, that a mere contract to sell and purchase at some time in the future, in no wise executed either by the payment of any of the purchase price or by delivery of possession, does not vest any such title in the proposed purchaser. It at most gives him a right of action upon his contract, which does not reach the dignity of an interest in the property, legal or equitable, until he performs at least in part. 1 Warvelle, Vendors (1st ed.) 188; 29 Am. & Eng. Ency. of Law (2d ed.) 603; *Walker v. Douglas,* 70 Ill. 445; *Chappell v. McKnight,* 108 Ill. 570; *Peck v. Bemiss,* 10 La. Ann. 160, 163; *Broadwell v. Raines,* 34 La. Ann. 677; *Nunngesser v. Hart,* 122 Iowa, 647, 98 N. W. 505. The question whether a written agreement is to be deemed one of present sale, or merely for sale in the future, depends upon the intent of the parties, which must be gleaned from the instrument itself, and, in case of ambiguity, from any surrounding conduct or circumstances. In this instance the so-called land contract is too plainly prospective to warrant extended discussion. By its terms Bunting does not presently sell, but agrees to sell at some time within thirty days, and Schallert does not declare that he purchases, but that at some time within the thirty days, upon conveyance, he will pay the proposed purchase price. Schallert took no possession until he had obtained the conveyance some four

days after the agreement for purchase was made, and, indeed, the written contract of purchase was in some part abandoned by both parties thereto, and upon the day of the actual conveyance their minds met upon new terms of sale, whereby, instead of a $3,000 note being given as part consideration and a $1,000 mortgage being assumed by the grantee, $1,451 in cash was paid and $2,300 of mortgages assumed, and whereby such payments were made, not upon a conveyance to Schallert, as provided in contract, but upon the conveyance to *Bienfang*. Such deed in no sense conveyed to *Bienfang* any interest in the real estate, legal or equitable, belonging to Schallert, but did convey to her Bunting's complete title for a consideration wholly paid by Schallert.

Having concluded that the judgment is erroneous and not supported by the findings or by the facts proved, we are confronted with the further question whether, within the pleadings and proofs, any relief can be granted. The complaint, while expressly praying that the conveyance be set aside and the plaintiff's judgment decreed to be a lien upon the property, contains allegation of all the facts necessary to establish a trust in the appellant and in favor of the plaintiff, together with all other creditors existing on March 10, 1905, and declares that the suit is brought on behalf of the plaintiff and other creditors, although it attempts to limit the benefit of the suit to other judgment creditors. The complaint also, in addition to the prayer above mentioned, does ask for such other and further relief as may be just and equitable. It also sufficiently shows inadequacy of any remedy at law by alleging issue and *nulla bona* return of execution under plaintiff's judgment. That is *prima facie* proof that Schallert has no property within reach of execution, and the burden of proof is on defendant to disclose any such property. *Gilbert v. Stockman,* 81 Wis. 602, 51 N. W. 1076, 52 N. W. 1045; *Zweig v. Horicon I. & Mfg. Co.* 17 Wis. 362; *Level L. Co. v. Sivyer,* 112 Wis. 442, 453, 88 N. W. 317; *Jones*

*v. Green,* 1 Wall. 330. The contention that, in order to invoke aid of a court ·of equity to reach specific real estate fraudulently conveyed by the debtor, the execution must issue to the county of its *situs,* if sustained, could have no application to such action as we determine this to be, namely, one *in personam* against a party residing in the county of the rendition of the judgment, to charge her with a trust. This complaint not having been assailed for insufficiency except by a general objection to evidence in the nature of a demurrer *ore tenus,* we conclude must be held sufficient to support such equitable relief as may fairly result from the facts alleged and established, and to that end the present findings, so far as they go, may properly be taken as the conclusion of the trial court upon the facts which they cover, at least with reference to the real estate. But from those facts results, not a right in the plaintiff to have its judgment declared a lien or to have any preference over other creditors, but a right to have decreed and declared as against appellant a trust in favor of all creditors existing at the time of the conveyance, including itself.

There must therefore be proceedings to ascertain who those creditors are, based upon an adequately published notice limiting a reasonable time within which they may establish the amount of their claims, and, as a condition of being allowed to share in the fruits of the litigation, shall each pay to the plaintiff his proportionate share of the expenses which it has reasonably incurred in uncovering and realizing this fund. When the entire amount of such debts is ascertained, the appellant, by virtue of the statute, has the right to perform her trust by paying them, and upon default in so doing the court should provide for the sequestration of the real estate conveyed to her and sale thereof either by a receiver or some other proper method, and the apportionment of the amount so realized amongst the creditors who have become parties to the suit in the manner above

mentioned.    The form of such procedure and decree is discussed somewhat in 5 Ency. Pl. & Pr. 603–610; *Marsh v. Burroughs,* 1 Woods, 463, Fed. Cas. No. 9,112; *Hallett v. Hallett,* 2 Paige Ch. 15; *Thompson v. Brown,* 4 Johns. Ch. 619; *Williamson v. Wilson,* 1 Bland, 418, 440; *Stevens v. Brooks,* 22 Wis. 695.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings according to law.