DORRINGTON, Appellant, vs. JACOBS and others, Respondents.

*December 4, 1933—January 9, 1934.*

522

*Everett P. Doyle* of Delavan, attorney, and *Alfred L. Godfrey* of Elkhorn of counsel, for the appellant.

For the respondents there was a brief by *Thorson & Seymour* of Elkhorn, and oral argument by *Arthur P. Thorson.*

FAIRCHILD, J.   When a person pays a valuable consideration for property which he causes to be deeded directly to another, no trust or use results in favor of him by whom such payment is made, but the title vests in the person named as the grantee in such conveyance.   Should the person paying the consideration then be a debtor, the conveyance is presumed fraudulent as against his creditors, and if a fraudulent intent is not disproved a trust results in favor of such creditors to the extent necessary to satisfy their just demands.   Secs. 231.07 and 231.08, Stats.

The learned trial judge ruled, and in our opinion he was right in doing so, that the facts of this case bring it within the rules affecting resulting trusts under the statutes above cited. He said:

"Wisconsin . . . adopted the rule that a trust results, not for the benefit of one creditor only, but of all creditors, and that the creditor must proceed in an equitable action to establish the trust. Except as against creditors, the title is perfect in the grantee, and as against them it is perfect if the grantee can prove the absence of a fraudulent intent."

The only persons who have an interest in the estate created by the deed from the Hansens to Agnes Jacobs are Agnes Jacobs, the grantee under the deed, and creditors of Stephen and Catherine Jacobs. Stephen and Catherine Jacobs, who advanced the consideration, are without claim of right to the property. *Cornell v. Radway,* 22 Wis. 260; *Miner v. Lane,* 87 Wis. 348, 57 N. W. 1105; *Allen v. McRae,* 91 Wis. 226, 64 N. W. 889; *State Bank of La Crosse v. Bienfang,* 133 Wis. 431, 113 N. W. 726; *Gowing v. Rich,* 1 Ired. L. (23 N. C.) 553; *Wadsworth v. Schisselbauer,* 32 Minn. 84, 19 N. W. 390. Appellant concedes that the foregoing proposition is correct unless, as he contends, the passage of the Uniform Fraudulent Conveyance Act, ch. 242, Stats., has changed matters. He insists that that act has enlarged the remedies available to a creditor, and that a creditor since the passage of the Uniform Fraudulent Conveyance Act has the right to disregard the conveyance and attach the property so conveyed; that it gives to each creditor a right to pursue his own individual course without responsibility to other creditors similarly situated, and in doing so to attack estates created under the resulting trust statutes as well as property directly conveyed in fraud by the debtor.

The Uniform Fraudulent Conveyance Act is in the main declaratory of the rules which existed at the time of its adoption. It may be said to be a restatement of the Statute of 13 Elizabeth. It cannot be construed into an implied re-

peal of the laws creating resulting trusts for creditors. It does provide for direct action by execution or attachment when a debtor has in fraud of a creditor transferred his property to another. But property passing from a grantor to a grantee, the consideration for which was paid by a third person, creates a trust estate, and a fraudulent debtor formerly was thus able to avoid the terms of the Statute of 13 Elizabeth and deprive his creditors of any way of satisfying their claims, while he enjoyed the benefits of a resulting trust. Statutes, of which secs. 231.07 and 231.08 are typical, were enacted to break down that practice. They take absolutely the trust estate from the debtor and preserve it for all his creditors. This emphasizes a distinction that it is important to have in mind in determining the rights of parties in this action. So there are now, as there were before the enactment of the Uniform Fraudulent Conveyance Act, two classes of cases, both commonly called "creditor's suits," one where the resulting trust estate is looked to by the creditors, and in that instance no title, legal or equitable, can be found vested in the debtor. He owns nothing, but the grantee holds the entire title as a trustee in favor of the creditors "and in favor of all of them, so that none can acquire preference over any other. The right of such creditors is not against the land, but, at the suit of all or any one for all, to charge the grantee with a trust, and that only to the extent that may be necessary to satisfy their just demands." *State Bank of La Crosse v. Bienfang, supra.*

The other class of cases is where property legally liable to execution has been fraudulently conveyed by the debtor and an action brought to set aside the conveyance as an obstruction to his lien. The facts which give rise to this sort of action are within the scope of the Uniform Fraudulent Conveyance Act.

The obvious difficulty of applying to a state of facts creating a resulting trust a statute making void a conveyance in fraud of creditors, is that the operation of such a statute

upon a conveyance from one to another when the consideration has been paid by a third party would not vest the title to the property in the fraudulent debtor, but would carry it back to the grantor.

A fraudulent conveyance under the Uniform Fraudulent Conveyance Act is void in law. The intervention of equity is not required for the purpose of setting aside the conveyance and is merely invoked in an action to quiet title for the purpose of removing the cloud created by the outstanding fraudulent conveyance. *Tom O. Mason Co. v. Lindquist,* 200 Wis. 11, 227 N. W. 392. In case of a resulting trust, the creditors stand in the position of a *cestui que trust* with rights purely equitable in origin and consequently to be enforced only in equity. *State Bank of La Crosse v. Bienfang, supra.*

It appears without dispute that Jacobs had transferred some valuable real estate to his daughter at a time when he was liable on notes which eventually became the property of appellant. It also appears that some months later Jacobs transferred in trust for his daughter an additional $60,000 worth of property. The circumstances connected with the first transfer to Agnes Jacobs placed the title to the real estate in Agnes, so that there remained in Stephen Jacobs no interest or property right upon which an attachment, in an action against Stephen Jacobs, could operate. Sec. 231.07, Stats.

In the Uniform Fraudulent Conveyance Act, the term "assets" is defined as being property liable for debts of the debtor, but this must be held to mean property in his name or property the title to which would be in him if a fraudulent conveyance were set aside. Jacobs has, so far as he is concerned, placed the property sought to be attached beyond his reach and beyond all possibility of his recovering by action at law or in equity the avails thereof. The real estate was not an asset of Stephen Jacobs and is not subject to the terms and regulations of the Uniform Fraudulent Convey-

ance Act. The term "conveyance," as defined in that act, may be broad enough to include the payment of money in exchange for property, but there is no claim that the Hansens, who transferred their property to Agnes Jacobs, did not act honestly and give good consideration for what they received. Under the definitions referred to, the only property which may be said to have been conveyed by Jacobs in this transaction is the money or property which he gave to the Hansens as consideration for their property, conveyed by them to Agnes Jacobs, and that cannot be reached.

It was determined by the trial court that respondent Nicholas was a purchaser for value and without notice of any defect in the title of Agnes Jacobs. That finding and conclusion appears to be sustained by the evidence and the objection to the allowance for damages provided for in the order below is not well taken. Sec. 266.20, Stats.

*By the Court.*—Order affirmed.