BLACKFORD *v.* GAYNOR ET AL.

(Decided December 10, 1934.)

*Mr. W. P. Moloney* and *Mr. Carter M. Patton,* for plaintiff in error.

*Mr. F. M. Marriott,* for defendants in error.

SHERICK, P. J. This is an action within an action by a judgment creditor to subject certain property, to wit, an interest in an estate by inheritance, in satisfaction of his judgment, as against the brother of the judgment debtor who claims to own the judgment debtor's interest in the estate by purchase and assignment for a valuable and adequate consideration without knowledge of any fraud or intent on the part of the judgment debtor to prefer him as against the judgment creditor.

Prior to the commencement of this action by the judgment creditor, Montier C. Blackford, the judg-

ment debtor, and the plaintiff in error, his brother, were prospective heirs to the estate of a deceased aunt. At that time, the judgment debtor was indebted to both his brother and the defendant in error who subsequently became the judgment creditor, for moneys loaned. At that time the judgment debtor conveyed and assigned to his brother, Harry L. Blackford, his interest in the estate of inheritance, the value thereof which was then indefinite, but which was finally ascertained to be of the value of $698, for the sum of $200 in cash, and a credit of $200 upon a secured note held by the brother, Harry L. Blackford. It is the claim of the judgment creditor as averred in his supplemental petition in garnishment that this conveyance was made by the judgment debtor with intent to defraud his creditors and particularly the judgment creditor, and that the consideration was grossly inadequate. It is not alleged in the supplemental petition that Harry L. Blackford had any knowledge of the fraudulent intent and purpose of the judgment debtor. Harry L. Blackford by his answer denies that he has any property or credits belonging to his brother in his possession or under his control.

It was the judgment of the trial court that the transfer and conveyance between the brothers was fraudulent and should be set aside. It was then ordered that Harry W. Crist, trustee of the estate's fund, should first pay out of the portion thereof belonging to the judgment debtor, the sum of $200 to Harry L. Blackford which was "the actual consideration paid by said defendant to the said Montier C. Blackford," and the balance thereof was ordered paid to John F. Gaynor, the judgment creditor. From this judgment Harry L. Blackford prosecutes error. Seven grounds of error are specified. Four of these are well taken, and these only we shall consider. First, that the court erred in overruling the motion of the plaintiff in error for judgment on the pleadings. Second, the motion of the

plaintiff in error for a directed verdict should have been sustained. Third, the judgment is contrary to law. Fourth, the judgment is against the manifest weight of the evidence.

Our first remark must be directed to the fact that the court found this conveyance to be fraudulent, and then held that the actual consideration therefor was $200, which was ordered repaid, no doubt upon the theory that such was inadequate. If Harry L. Blackford was a party to this fraud, then we are unable to conceive how he was entitled to any relief from the predicament in which the court found him. But be that fact as it may, we shall proceed to the law applicable to this case with but one further observation before so doing.

The defendant in error says that this court has before it only an abbreviated bill of exceptions, and hence we can not be advised as to all the facts of this case, because the court considered the evidence heard at other prior hearings in the trial court. Suffice it to say that we find it stipulated in the record before us that "the case was submitted to the court on the testimony given on hearing in aid of execution on October 19, 1933, in the present case, * * * which testimony is as follows." We thereafter find from the reporter's certificate and the trial court's approval that the presented bill of exceptions contains "all the evidence adduced on the trial of said cause." We find no objection or suggested amendment to the bill of exceptions to have been made by the defendant in error. If the bill did not speak the truth, it was the duty of the defendant in error to object thereto and to seek to make it contain all the evidence considered by the court. This he did not do. This court is bound by and limited to the record before us.

The defendant in error says that it was not necessary for him to aver and prove that the garnishee had knowledge of the judgment debtor's contemplated

fraud or fraudulent intent, for the reason that his supplemental petition is so drafted that relief is sought under Section 8618, General Code (which was Section 4196, Revised Statutes), and not under Section 11105, General Code (which was Section 6343, Revised Statutes). Reliance, for an affirmance of this judgment, is placed upon the case of *Huwe* v. *Knecht*, 10 Ohio App., 487. We shall briefly consider this case and point out by italicizing a portion of the second paragraph of its syllabus, which must conclusively show its inapplicability to the facts of this case.

"Section 11105, General Code, making knowledge of fraudulent intent material, applies only to Section 11104, General Code, relating to transfers in contemplation of insolvency or to prefer creditors, and not to *Section 8618, General Code, invalidating gifts to defraud creditors.*"

In 1824, before the enactment of Sections 11104 and 11105, General Code, the Supreme Court of this state in the case of *Lessee of Burgett* v. *Burgett*, 1 Ohio, 469, 13 Am. Dec., 634, had occasion to consider the predecessor of Section 8618, General Code, which now stands without material change. That court said:

"The question of greatest difficulty in this case arises from the fact, that our statute [Statute of Frauds, now Section 8618, General Code] the second section of which embodies, in part, the substance of the second section of the 13th, and the second section of 27 Elizabeth, contains no express words confining its operation to creditors, nor any proviso in favor of purchasers for a valuable consideration and *bona fide.*"

The court then proceeded to point out that the Statutes of Elizabeth contained provisos, which restrained them from operating against conveyances made for a good consideration and *bona fide*. The constitutionality of the act was then in question, and the court in

the course of its reasoning went on to say that the statute was but declarative of the common law which professed to protect only creditors, purchasers, and those having rights, and that if the statute were given the limited construction prescribed by its terms it was perhaps unconstitutional, and reached the ultimate conclusion that:

"Our statute, as it applies to the case before us must receive the same construction as though it had contained the restriction and proviso found in those of Elizabeth."

This may have been judicial legislation; but such can not alter the rule long ago established by this decision if it has been consistently followed by the courts of this state and not interfered with by subsequent legislative act. Let us see how the record now stands.

In *Bobilya* v. *Priddy, Assignee,* 68 Ohio St., 373, 67 N. E., 736, the court then considering Section 6343, Revised Statutes, now Section 11105, General Code, comments upon the *Burgett case, supra,* and says:

"It has been held as often as the question has arisen, that a purchase made in good faith and for fair value from an insolvent debtor, must be upheld as to the purchaser, even though the intent of the vendor may have been to hinder, delay or defraud his creditors. * * * *Burgett* v. *Burgett,* 1 Ohio, 469."

That court further commenting on an amendment to Section 6343, Revised Statutes, which expressly protected innocent purchasers, says on page 387, that:

"This amendment for the first time supplies by legislative enactment that which had ever since the case of *Burgett* v. *Burgett* been read into the statute by judicial construction. But the legal effect of the statute was not changed by this amendment of the section, but remains the same as when the court by construction read into the statute an exception in favor of innocent purchasers."

In *Lytle* v. *Baldinger,* 84 Ohio St., 1, 95 N. E., 389, Ann. Cas., 1912B, 894, the court again considered Section 6343, Revised Statutes, now Section 11105, General Code, with reference to the necessity of one's pleading to set aside a fraudulent sale or transfer, and it was held that it must be averred that the purchaser or assignee knew at the time of the transaction of the debtor's fraudulent intent; and if such averment be lacking, the petition is insufficient and does not state a cause of action. This court followed that holding in *Gould* v. *Cooper,* 15 Ohio App., 223.

Again in *Carruthers* v. *Kennedy,* 121 Ohio St., 8, 166 N. E., 801, we find the reasoning of *Bobilya* v. *Priddy, Assignee, supra,* approved of, and *Lytle* v. *Baldinger, supra,* upheld.

There is no proof in the record before us of any fact which would have charged the plaintiff in error with knowledge of his brother's intent to defraud the defendant in error. The fact of knowledge of the fraudulent intent should have been pleaded, and in that respect the supplemental petition is fatally defective.

The burden was upon the defendant in error to make proof of the assignee's knowledge of the fraud. In this respect the defendant in error wholly failed, and the judgment is therefore not only manifestly against the weight of the evidence, but is not supported by any evidence on this essential issue; unless it be because of the brothers close kinship. In the *Gould case, supra,* this court's predecessor held that such a transaction between a husband and his wife "may excite suspicion and become the subject of scrutiny * * * but if made in good faith in payment of a *bona fide* indebtedness then existing, and the excess in the value of the property over her claim is not such as to charge her with notice of a fraudulent transfer on the part of the husband, no presumption of fraud will be inferred on account of the relationship." The rule in that case

is applicable to the present controversy, for when the facts before us are considered, we must and do find that payment of $400 for an indefinite inheritance, afterwards found to be of the value of $698, is not so disproportionate as to have warned the assignee of any fraudulent intent.

It is the judgment of this court that the cause be reversed and final judgment entered for the plaintiff in error.

> *Judgment reversed and judgment for plaintiff in error.*

LEMERT and MONTGOMERY, JJ., concur.