**GENERAL KONTROLAR CO., Inc., v.
ALLEN.**

No. 8891.

Circuit Court of Appeals, Sixth Circuit.

Nov. 10, 1941.

As Amended on Denial of Rehearing
Jan. 9, 1942.

Byron B. Harlan, of Dayton, Ohio (Byron B. Harlan, Thomas E. Marshall, and Marshall, Harlan & Marshall, all of Dayton, Ohio, on the brief), for appellants.

E. S. Allen, of Cincinnati, Ohio (Robert S. Nevin, of Dayton, Ohio, and E. S. Allen, of Cincinnati, Ohio, on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

The principal question presented by this appeal is whether an assignment of certain patents by the General Kontrolar Company, Inc., appellant (hereinafter referred to as the corporation) to Mrs. Mary Agnew, co-appellant, on October 21, 1938, is voidable or valid. The appellee, Mary Jane Allen, a judgment creditor of the corporation, filed the petition herein on October 11, 1939, as administratrix of the estate of Mrs. Irene McGowan, deceased, seeking to have the corporation declared bankrupt and the assignment set aside as having been executed with intent to hinder, delay, and defraud creditors.

The receiver of the corporation, appointed in a state court action on October 3, 1939, filed an answer in which he admitted that the corporation was insolvent, and stated that its assets were insufficient to pay more than the costs of receivership and administration. He urged the court to delay action on the bankruptcy petition until the validity of the assignment of patents was determined.

Mrs. Agnew filed an answer which alleged that the assignment of patents to her was pursuant to an agreement with the corporation dated June 8, 1935, and specifically denied any fraud on her part. Thereupon a special master was appointed to determine the validity of the assignments and to report on the value of all other assets of the corporation.

After extended hearings the master filed a comprehensive report with findings of fact and conclusions of law. He held the assignment valid, not executed in fraud of creditors, and found that there was no evidence that the other assets of the corporation had any substantial value.

The District Court sustained appellee's exceptions to the master's report and entered an order holding that the master had erred in concluding that the burden of proof was upon the creditor to show the assignments invalid. The court made no specific findings of fact and no other conclusions of law, and filed no opinion.

As to the oral testimony, the master had a superior opportunity to appraise the credibility of the witnesses and to resolve conflicts in their testimony. His findings based thereon are presumptively correct. Commissioners of Sewerage v. Davis, 6 Cir., 88 F.2d 797, 800. Some of the testimony was stipulated and as to it and the documentary evidence, in view of the disagreement of court and master, this court is not bound by the presumption which attaches to the conclusions of the lower tribunals when they are in accord. Carter Oil Co. v. McQuigg, 7 Cir., 112 F.2d 275 279.

The significant facts may be summarized as follows: Gisbert L. Bossard, the inventor of the patents in dispute, was the president of the corporation which was engaged at Dayton, Ohio, in the business of manufacturing and selling electrically motivated devices, notably residential chime signals. His wife, Josephine Bossard, was secretary of the corporation. Mrs. Agnew, a resident of Hopkinsville, Kentucky, had known Mrs. Bossard when they were girls and became acquainted with Dr. Bossard in 1933. About this time she acquired from Bossard a small amount of stock in the corporation. In November, 1934, she lent Bossard $1,500 which was used to attempt a compromise of a federal income tax claim of around $12,500, arising out of the sale of a number of patents by the corporation to the Leland Electric Company, consummated in 1932. In May, 1935, Mrs. Bossard borrowed an additional $60 from Mrs. Agnew for the corporation, and on June 7, 1935, $440 more. For these advances the corporation gave Mrs. Agnew its promissory note for $2,000, dated June 8, 1935, due three years from date. The note was secured by an instrument of the same date, assigning title to six patents, subject to a provision that the assignments were to be of no effect from and after payment of the note in full if paid before June 8, 1938. The corporation and Bossard personally further agreed to disclose and assign to Mrs. Agnew, without further compensation, inventions made, conceived, or obtained by them up to and including the date of maturity or payment of the note. This instrument was not filed for record. Early in 1936 Mrs. Agnew lent the Bossards an additional $3,000, a part of which and the original $2,000 were used to effect a settlement of the income tax claim against the corporation.

Appellee's judgment for $9,686.93 arose out of a note given in consideration for the withdrawal of a previous suit, and was obtained on September 27, 1939. At the time Mrs. McGowan accepted the note she was fully apprised of the facts as to the conditional assignment or mortgage of the .patents to Mrs. Agnew.

Mrs. Agnew knew that Bossard was president and Mrs. Bossard secretary of the corporation, but she did not know who the directors were. Although a judgment for $3,700 had been taken against the corporation by the Agricultural National Bank of Pittsfield, Massachusetts, on October 19, 1938, Mrs. Agnew had no knowledge of this fact when all the patents listed in the instrument of June 8, 1935, were formally assigned to her by written instrument dated October 21, 1938, and recorded in the United States Patent Office on October 27, 1938. The corporation was then actively engaged in the normal prosecution of its business and continued thereafter to manufacture and sell articles covered by the patents under license from Mrs. Agnew. In the spring of 1939 the corporation appears to have been able to increase its quantity of production.

■ We agree with the appellee that the case should be considered as one in equity and governed by equitable principles (Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281), but we are constrained to hold that it was incumbent upon the appellee, who asserts intent to hinder, delay, or defraud creditors, to establish such intent by clear and convincing evidence. This is the usual rule in fraud cases. The authorities cited by the appellee [Pepper v. Litton, supra; Geddes v. Anaconda Copper Mining Co., 254 U.S. 590, 41 S.Ct. 209, 65 L.Ed. 425; In re Van Sweringen Co. (Terminal & Shaker Heights Realty Co. v. Van Sweringen Co.), 6 Cir., 119 F.2d 231] illustrate the exception, where a director or dominant stockholder is called to account for moneys and profits personally received by him while acting in such fiduciary capacity, and do not convince us that the rule placing the burden of proof on the fiduciary in such case should be applied here, where there is no showing that the fiduciary received any personal gain out of the transfer in question, and where the corporate transfer had for its beneficiary a stockholder who received the assignment without notice and for value. Cf. Barr & Creelman Mill & Plumbing Supply Co. v. Zoller, 2 Cir., 109 F.2d 924.

■ We conclude that Bossard, and through him the corporation, had an intent to hinder and delay creditors, which on the question of the validity of the assignment has the same legal effect as the intent to defraud. Fish v. East, 10 Cir., 114 F.2d 177; Shapiro v. Wilgus, 287 U.S. 348, 354, 53 S.Ct. 142, 77 L.Ed. 355, 85 A.L.R. 128. It was not established, however, that Mrs. Agnew had any knowledge of such intent on the part of Bossard or the corporation, or participated in any way in such plan or design. Rather it appears that she was making a diligent effort to collect her money. Although Bossard wrote letters calculated to mislead

creditors as to the true state of the title to the patents after the assignment of October 21, 1939, there is no evidence that Mrs. Agnew had any knowledge of such activities or that they were carried on pursuant to any agreement on her part.

It is urged on behalf of the appellee that Bossard should be considered as the agent of Mrs. Agnew so as to make it unnecessary for a creditor to prove actual fraud or collusion on the part of the assignee. We are unable to accept this ingenious argument, for there can be no agency without an intention to create it and mere friendship and confidence in the integrity of a friend is not its equivalent.

The principal authority urged to support the claim that the assignment is invalid is § 67, sub. d(2) of the Bankruptcy Act, 11 U.S.C. § 107, sub. d(2), 11 U.S.C.A. § 107, sub. d(2), which is set out in the margin.[1]

Section 67, sub. d(1) (e) (1) of the Act expressly defines "fair consideration" as used in § 67, sub. d to include satisfaction of an antecedent debt. The patents were not shown to have had a value in excess of $2,000 and therefore the consideration for the assignment was fair. There was evidence that diligent efforts to find a purchaser for them for a price in the neighborhood of that amount were unavailing. The Federal Government with a first lien on the patents by virtue of its income tax claim preferred to accept $2,500 in cash rather than to sell them in an attempt to obtain a larger amount. The presence of fair consideration obviates any necessity for further discussion of subdivisions (a), (b), or (c).

Subdivision (d) presents a question of more difficulty and requires interpretation with reference to the facts here. The language is identical with § 7 of the Uniform Fraudulent Conveyance Act. When the Chandler Act was under consideration, the House Committee on the Judiciary made a report (July 29, 1937, p. 32) which reads in part as follows: " * * * the provisions of the old law have been expanded by incorporating into subdivision d the salient provisions of the Uniform Fraudulent Conveyance Act. This was done because the Uniform Act is largely declaratory of the better decisions of American State courts construing the Statute of Elizabeth referred to above. [Statute of Fraudulent Conveyances, 13 Eliz., c. 5, 1570.] It has been adopted in a number of States, and may in time be adopted in most of the States. Since such uniformity is equally desirable under the Bankruptcy Act in respect to this particular subject, it was deemed advisable to set up in section 67 the essential provisions of the Uniform Act."

The Uniform Act to which reference was thus made has been adopted with minor variations in sixteen states. 9 Uniform Laws Ann. 169. Under it, the majority of cases, where the transfer is for a valuable consideration, as distinguished from a voluntary, gratuitous transfer, hold that a fraudulent intent on the part of the debtor is not sufficient to invalidate the transaction unless a corresponding intention or knowledge of the debtor's purpose on the part of the transferee is made to appear.

In view of the statement in the legislative history that the Uniform Act is largely declaratory of the better decisions construing the Statute of Fraudulent Conveyances, 13 Eliz. (see also *Dorrington v. Jacobs*, 213 Wis. 521, 252 N.W. 307, 91 A.L.R. 737), it is significant that practically the same rule has been generally followed in cases decided before the Uniform Fraudulent Conveyance Act was drafted in 1919

---

[1] Section 67, sub. d (2).
"Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition in bankruptcy * * * is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent; or (b) as to then existing creditors and as to other persons who become creditors during the continuance of a business or transaction, if made or incurred without fair consideration by a debtor who is engaged or is about to engage in such business or transaction, for which the property remaining in his hands is an unreasonably small capital, without regard to his actual intent; or (c) as to then existing and future creditors, if made or incurred without fair consideration by a debtor who intends to incur or believes that he will incur debts beyond his ability to pay as they mature; or (d) as to then existing and future creditors, if made or incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either existing or future creditors."

or under other statutes more or less declaratory of the common-law decisions thereunder. Horbach v. Hill, 112 U.S. 144, 148, 5 S.Ct. 81, 28 L.Ed. 670; Fish v. East, supra, 114 F.2d at page 183; Carruthers v. Kennedy, 121 Ohio St. 8, 166 N.E. 801; Blackford v. Gaynor, 50 Ohio App. 494, 198 N.E. 736. See, also, Pittman v. Union Planters National Bank & Trust Co., 6 Cir., 118 F.2d 211.

The master found that Mrs. McGowan, in her transactions with Bossard, did not rely upon the patents as an unencumbered asset of the corporation. It is shown by a witness who was present in 1937 at a number of conferences between the Bossards and Mrs. McGowan that the books of the company were produced during these negotiations. Mrs. McGowan was personally taken to the corporation plant and was fully informed that Mrs. Agnew had advanced $2,000 in an effort to compromise the claim for income tax. The witness stated that Bossard explained to Mrs. McGowan that the patents were no longer the property of the corporation and could not be reached on execution. The information that appellee's attorney received from Washington that the patents were there recorded in the name of the corporation is not necessarily inconsistent with the existence of a valid assignment thereof. We conclude that Mrs. McGowan was fully informed of the assignment.

■ The assignment was made for a valuable consideration in the form of release of an antecedent debt and forbearance to sue thereon, and was not shown to be assailable under state or federal law. If the security agreement be considered a mortgage voidable under Ohio or Kentucky law, it is not void. At all events, satisfaction in good faith and as a fair equivalent of the obligation which the mortgage was given to secure was a valuable consideration ample to support the assignment.

In view of our conclusions as to the validity of the assignment, we deem it unnecessary to rule upon other questions relating to the merits.

■ There remains to be considered the question as to the jurisdiction of the District Court to declare the corporation bankrupt. The petition alleged that the creditors of the corporation were less than twelve in number, Title 11, U.S.C. § 95, sub. d, 11 U.S.C.A. § 95, sub. d. Although this allegation was technically put in issue by a general denial of all allegations not expressly admitted to be true in the answer filed by the state court receiver, there was no compliance with the requirement in the same section of the statute requiring a list of all the creditors to be filed with the answer. We do not consider the documents relied on as indicating that there are many more than twelve creditors for the reason that they were filed after the appeal was pending in this court and are no part of the record. Neither does it appear from these lists when the persons named became creditors. An appearance was entered for the Agricultural National Bank of Pittsfield, Massachusetts, a judgment creditor, whose counsel was permitted to participate in the examination of witnesses and upheld the position of the appellee on the matter of the validity of the patent assignment. Other creditors were also represented at the hearings. Unlike requirements of residence or domicile, a defect as regards the number of creditors may be waived. Arbetman v. Reconstruction Finance Corporation, 7 Cir., 109 F.2d 167, 170, certiorari denied 309 U.S. 671, 60 S.Ct. 614, 84 L.Ed. 1017, rehearing denied 309 U.S. 698, 60 S.Ct. 721, 84 L.Ed. 1037; In re Cooper, D.C.Mass., 12 F.2d 485. Moreover, the objection was not raised below at or before the time of adjudication. We think that jurisdiction in this respect was properly entertained.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.