474 F.2d 1033
 In the Matter of SOUTHERN LAND TITLE CORPORATION, Debtor. In
re SOUTHERN LAND TITLE CORPORATION and the Five
Flags Building, Inc. Appeal of Albert J.
WARD, Jr., Trustee,
 No. 71-1891.
 United States Court of Appeals,
Fifth Circuit.
 March 19, 1973.
 
 John Pat Little, Charles J. Schwartz, Jr., New Orleans, La., for Ward.
 Carl W. Cleveland, C. Ellis Henican, Jr., New Orleans, La., for Henican, James, and Cleveland.
 James J. Morrison, James J. Morrison, Jr., New Orleans, La., for Debtor Corp.
 Clem H. Sehrt, Peter J. Butler, Moise S. Steeg, Jr., New Orleans, La., for appellee.
 Before WISDOM, GOLDBERG and MORGAN, Circuit Judges.
 WISDOM, Circuit Judge:
 
 
 1
 Albert J. Ward, Jr., is the Trustee in bankruptcy for the debtor corporations, The Five Flags Building, Inc. and Southern Land Title Corporation. He appeals from the decision of the district court in a reclamation action against 225 Baronne Street, Inc. In this action the trustee sought the return of the building in New Orleans known as "225 Baronne" to Five Flags and the land on which the building is situated to Southern Land Title. The trustee alleged that the sale of the bankruptcy's property within one year before the filing of the petition in bankruptcy was a voidable preference under section 67, sub. d(2), and section 70, sub. e(1), of the Bankruptcy Act.[1]
 
 
 2
 Five Flags is a wholly owned subsidiary of Southern Land Title Corporation. Five Flags Building, Inc. and Southern Land Title were two of the holdings in the so-called "Sam Recile Empire." As is the case with some empires, Sam Recile's had a spectacular rise and a swift decline. It was financed through the influence of Louis J. Roussel. Roussel was a member of the Board and Executive Committee of the National American Bank, and admittedly controlled the said Bank. Mr. Roussel personally, along with his family, or with nominees, owned almost fifty percent of the widely held stock of the Bank, and owned or controlled the majority of stock of Empire Land, Republic Petroleum Corporation, Universal Drilling Company, Bankers Union Life Insurance Company, and Gulf Natural Gas Corporation. These companies, along with the National American Bank, provided much of the financing of the debtor corporations and others in the "Recile Empire". According to the trustee, Roussel knew of the financial distress of the Recile Empire, including especially the troubles of the debtors corporations, and he manipulated the whole situation so as to put the 225 Baronne Building beyond the reach of creditors to protect himself and the National American Bank. The trustee considers that both the transferor and transferee were in bad faith. The evidence in the record in support of the trustee's position does not compel this Court to hold that the trial judge's findings were clearly erroneous.
 
 
 3
 The district court denied reclamation. We affirm.
 
 I.
 
 4
 In 1964, Five Flags obtained a loan of $2,350,000 from the National American Bank on the condition, among others, that it pledge non-interest bearing certificates of deposit totaling $1,500,000 with the Bank. Five Flags pledged the certificates, and they remained in the Bank's custody until April 1965 when Philip James, as president of Five Flags, obtained the release of the proceeds. The Bank credited the proceeds to Five Flags' checking account but received no additional security to replace the certificates.
 
 
 5
 In February 1965, the Bank demanded payment on the remaining principal due on the loan, which was then in default, and noted that the non-interest bearing certificates of deposit required by the loan agreement had never been replaced. Negotiations ensued, but the record indicates that on April 13, 1966, there was still owing a principal balance of $923,579.74 on the original loan. The Bank, however, finally withdrew its demand for immediate payment and agreed to an additional loan of $526,420.26 to Five Flags in return for its consent to several conditions expressed in a letter dated April 15, 1966, from Clem H. Sehrt, the president of National American Bank.
 
 
 6
 On June 1, 1966, the loan of $1,450,000 from National American Bank was still unpaid. On June 17, in accordance with Sehrt's letter of April 15, and the previous understanding between Sehrt and Philip James, a collateral mortgage in the amount of $1,450,000 on the 225 Baronne Street Building was executed in favor of National American Bank and was recorded on June 20.[2] There were two prior, unpaid mortgages on the property.
 
 
 7
 In August 1966, C. Ellis Henican succeeded Sam Recile as president of Southern Land Title Corporation. Roussel put two officers of the National American Bank on the Five Flags' five-man board of directors. According to Henican, Roussel had become "disenchanted" with Recile, partly "because he no longer liked Mr. Recile, having been a very close associate of Recile from the inception"; partly because "he felt that the debts of the corporation were not being properly taken care"; and partly because somebody of "[Henican's] age and maturity and standing in the community should come forward and stabilize" the corporation.
 
 
 8
 The corporation's financial problems continued, and Five Flags soon defaulted on both the second and third mortgages on the 225 Baronne Building. Five Flags was unable to pay even the principal sum of $25,000 due monthly on the Bank's mortgage. As of September 21, 1966, Five Flags was delinquent from April 1, 1966, on the interest due the Bank on its loan and was delinquent on the $25,000 principal payments due for July, August, and September 1966.
 
 
 9
 Despite these financial difficulties, Henican believed that the debtor corporations could be rehabilitated and that the proper way to accomplish this was to sell as much of the assets as possible in order to reduce the company's debt. Henican was also of the opinion that the rental income from 225 Baronne was being diverted to Southern Land and other entities and that this was a major factor in Five Flags' default on the second and third mortgages encumbering the property. Accordingly, Henican offered to sell the 225 Baronne Building to Louis Roussel. Rousell, along with several others, then formed 225 Baronne Street, Inc. On September 21, 1969, 225 Baronne Street, Inc. paid $15,750,000 for the building and the land. 225 Baronne Street, Inc. also paid an additional sum of $256,457.05 to National American Bank for the credit of Five Flags. These funds represented the credit received by 225 Baronne Street, Inc. on its purchase of the second mortgage encumbering the property.
 
 
 10
 On December 7, 1966, Southern Land Title and Five Flags filed a voluntary petition for corporate reorganization under Chapter X of the Bankruptcy Act. The district court dismissed the petition on February 3, 1967. An hour later ten creditors of the debtor corporations filed an involuntary petition for corporate reorganization. The trustee later requested a hearing pursuant to sections 21 and 167 of the Bankruptcy Act. 11 U.S.C. Secs. 44 and 567. By stipulation of the parties, this proceeding was converted into a summary-plenary proceeding for reclamation in which the central issue was whether the trustee could reclaim from 225 Baronne Street, Inc. the title of the land and building at 225 Baronne Street. After a lengthy trial, the district court on September 9, 1970, issued its decision denying reclamation, 316 F.Supp. 1059. The trustee appeals from that decision.[3]
 
 II.
 
 11
 The trustee's first contention is that the sale of the land and building at 225 Baronne to 225 Baronne Street, Inc. is a voidable preference under section 67, sub. d(2)(a), (b), and (c) of the Bankruptcy Act. 11 U.S.C. Sec. 107, sub. d(2)(a), (b), and (c).[4] These subclauses provide that certain transfers made by the debtor within one year prior to the filing of a petition in bankruptcy are presumed to be fraudulent, regardless of actual intent, if made without fair consideration. As defined in subclause (d)(1)(e)(1), consideration given for the property of a debtor is fair "when, in good faith, in exchange and as a fair equivalent therefor, property is transferred or an antecedent debt is satisfied. . . ." 11 U.S.C. Sec. 107, sub. d(1)(e)(1). Thus, fair consideration requires both (1) a fair equivalent, and (2) good faith on the part of the transferee. Cohen v. Sutherland, 2 Cir. 1958, 257 F.2d 737, In re Messenger, D.C.E.D.Pa.1940, 32 F.Supp. 490; 4 Collier on Bankruptcy p67.33 (J. Moore, ed. 1967). As to the first requirement, the district court found that 225 Baronne Street, Inc. paid $15,750,000 to Five Flags for the Baronne Building and the land thereunder and paid an additional $256,457.05 to the National American Bank for the credit of Five Flags. The later sum represented the credit received by 225 Baronne Street, Inc. on its purchase of the second mortgage encumbering the property. The district court concluded that these amounts were a fair equivalent of the property transferred, and the trustee has not presented any evidence controverting that finding.
 
 
 12
 As to the second requirement, the district court found that the transfer was made in good faith. The trustee contends, however, that Louis J. Roussel and the other shareholders and directors of the transferee, 225 Baronne Street, Inc., knew in August 1966 that Southern Land Title and Five Flags were in severe financial distress and that they acted in bad faith to further their own financial interests and those of National American Bank at the expense of the general creditors of the bankrupt corporations. The trustee asserts that the directors of 225 Baronne Street, Inc. were either directors of National American Bank, members of an advisory board of one of its branches, or business associates of Roussel, the Bank's principal shareholder. The trustee further contends that Roussel controlled and dominated both the Bank and 225 Baronne Street, Inc.; that the Bank's outstanding loans to Five Flags gave Roussel a controlling influence over the bankrupt; and that Roussel used his influence to force the sale of the 225 Baronne Building to 225 Baronne Street, Inc., a corporation formed by Roussel for that specific purpose. The trustee would conclude that actions of Roussel and the directors of 225 Baronne Street, Inc. were in bad faith and were designed to enrich themselves and the Bank unjustly at the expense of the general creditors of the bankrupt.
 
 
 13
 Whether the transfer in the present case was made in good faith is a question of fact. Mayo v. Pioneer Bank & Trust Co., 5 Cir. 1959, 270 F.2d 823, rehearing denied, 274 F.2d 320, cert. denied 362 U.S. 962, 80 S.Ct. 787, 4 L.Ed.2d 877. Wide latitude must be given to the trier of fact in resolving such questions.[5] The immense record in this case reflects the district court's efforts to ferret out the relevant facts and to resolve differences in testimonial and documentary evidence. We have examined the record and carefully considered the district court's findings in light of the clearly erroneous standard. We conclude that the district court's findings are not clearly erroneous.
 
 
 14
 The evidence indicates, and the district court found, that no officer or director of 225 Baronne Street, Inc. was ever furnished a financial statement indicating the condition of Five Flags or Southern Land Title in 1966. Nor was any such statement made available to the officers and directors of the debtor corporations. What information was available, however, indicated that the debtor corporations were not insolvent. As the district court found, in August 1966 both Henican, the president of Southern Land Title, and James, the president of Five Flags, believed that the rental income from the 225 Baronne Building was being diverted for improper purposes and that this was a major factor in Five Flags' default on the second and third mortgages encumbering the subject property. As noted, Henican was convinced that the debtor corporations could be rehabilitated financially by selling as much of the assets as possible to reduce the debt. His appraisal of the financial condition of Five Flags was communicated by letter to both 225 Baronne Street, Inc. and the National American Bank. None of the officers and directors of 225 Baronne Street, Inc. knew or had reasonable cause to suspect that Five Flags and Southern Land Title were insolvent-at least in terms of the sufficiency of the evidence in the record. We must conclude, therefore, as did the district court, that the trustee has failed to show any evidence of bad faith and that the transfer was made for fair consideration within the meaning of section 67 sub. d(2)(a), (b), and (c). 11 U.S.C. Sec. 107, sub. d(2)(a), (b) and (c).
 
 III.
 
 15
 The trustee's second contention is that the sale of the Baronne Building is a voidable preference under section 67, sub. d(2)(d), 11 U.S.C. Sec. 107, sub. d(2)(d). This section provides that even if the consideration is fair, a transfer of property is fraudulent if "made or incurred with actual intent as distinguished from intent presumed in law, to hinder, delay, or defraud either existing or future creditors." In determining the applicability of section 67, sub. d(2)(d), it is necessary to examine both the intent of the bankrupt and the intent of the transferee. A fraudulent intent on the part of either party enables the trustee to avoid the transfer. 4 Collier on Bankruptcy p 67.37 (J. Moore, ed. 1967).
 
 
 16
 With respect to the intent of the transferor, Five Flags, the trustee contends that both Henican and James, the presidents of Southern Land Title and Five Flags respectively, were guarantors on loans made by National American Bank to Five Flags and were therefore dominated by Louis Roussel. In addition, the trustee points out that two other directors of Five Flags, William La-Rose and Jennings L. Courville, were the Bank's Executive Vice President and Vice President, respectively, as well as directors of the Bank. On the basis of these associations between the directors of Five Flags and National American Bank, the trustee argues that the sale of the Baronne Building was intended to enhance the personal financial condition of Henican and James and to insure that Roussel's and the Bank's interests would be preferred over those of the general creditors of the debtor corporations. With respect to the intent of the transferee, 225 Baronne Street, Inc., the trustee reiterates the general contentions made in relation to the alleged bad faith on the part of its directors.
 
 
 17
 After examining the record, we agree with the district court that there was no intent "to hinder, delay, or defraud either existing or future creditors." The debtor corporations entered into the transaction for the purpose of rehabilitating themselves financially, and neither Henican nor James voted for the sale to defeat creditors of Five Flags or to prefer the National American Bank or Roussel to the detriment of the other creditors. The board of Directors of Five Flags, of course, included two officers of National American Bank. Courville and LaRose, who were elected to insure that the rental from 225 Baronne was applied to the debts of Five Flags. But there is no indication that these two men voted to defraud the creditors or to prefer the Bank. As the district court stated:
 
 
 18
 [A]lthough the Board of Directors of Five Flags Building, Inc., consisted of five members acting independently, Henican, by letter dated September 14, 1966, advised Louis J. Roussel and associates, that he, Philip E. James and Middleton Wootten, constituted a majority of the Board, and regardless of the actions of the other two members [Courville and LaRose], the Board would vote for the sale of said property. The act of sale in question with reference to The Five Flags Building, Inc., was not passed pursuant to any vote of its Board of Directors, but was passed pursuant to a Unanamous Consent of its sole shareholder, Southern Land Title Corporation.
 
 
 19
 Furthermore, we note that it was Henican, not Roussel, who proposed the sale of the 225 Baronne Building, and the trustee's argument that Henican and James were dominated by Roussel finds no support in the record. We conclude that there was no fraudulent intent on the part of Five Flags or Southern Land Title.
 
 
 20
 In considering the intent of 225 Baronne Street, Inc., the district court found that 225 Baronne Street, Inc. paid a fair equivalent for the land and building; that 225 Baronne Street, Inc. was not in a position to control or dominate the bankrupt; and that 225 Baronne Street, Inc. had no intent to defraud or hinder other creditors. In addition, the court held that the National American Bank had a valid third mortgage on the Baronne Building; that it was entitled to protect its interest when the property was sold; and that it, too, had no intent to defraud or hinder other creditors. The record supports these findings.
 
 
 21
 As to the other alleged wrongdoings of Jennings Courville and the overline situation between the Bank and Southern Land Title, the district court held that these transactions were irrelevant to the present transaction, and we reaffirm that decision.
 
 
 22
 We conclude that the sale of the 225 Baronne Building is not a voidable preference under section 67, sub. d(2)(d) of the Bankruptcy Act.
 
 IV.
 
 23
 The trustee's final contention is that the transaction in the present case is voidable under section 70, sub. e(1), of the Bankruptcy Act, 11 U.S.C. Sec. 110, sub. e(1), which provides: "A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this [Act] which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this [Act], shall be null and void as against the trustee of such debtor." This section permits the trustee to avoid any transfer of the bankrupt's property fraudulent under state law. Articles 1978 and 1984 of the Louisiana Civil Code are the only sections of state law directly relevant to the present case.[6] Article 1978 provides:
 
 
 24
 No contract shall be avoided by this action but such as are made in fraud of creditors, and such as, if carried into execution, would have the effect of defrauding them. If made in good faith, it cannot be avoided, although it may prove injurious to the creditors; and although made in bad faith, it cannot be rescinded, unless it operates to their injury. La.Civ.Code art. 1978.
 
 
 25
 For a transfer to be fraudulent under this article, the presence of two elements is essential: (1) bad faith, and (2) injury to the creditors. Neither requirement is satisfied in the present case. The district court found that a fair equivalent was paid for the property and that both parties acted in good faith. Since we affirm those findings, the trustee is entitled to no relief under article 1978.
 
 
 26
 Article 1984 provides that "every contract shall be deemed to have been made in fraud of the creditors, when the obligee knew that the obligor was in insolvent circumstances, and when such contract gives to the obligee, if he be a creditor, any advantage over other creditors of the obligor." La.Civ.Code, art. 1984. Again, the trustee has failed to prove that the sale was fraudulent under the statute. The district court found that the officers of 225 Baronne Street, Inc. were not furnished with a financial statement of Five Flags or Southern Land Title and that they were unaware of the insolvency of the bankrupt corporations. The trustee has not shown that finding to be clearly erroneous. Furthermore, there is no indication that either 225 Baronne Street, Inc. or National American Bank received any undue advantage as a result of the sale of 225 Baronne.
 
 
 27
 The record in this case does not carry the fresh air of spring, the scent of sweet olive in bloom, and the pleasing thought of young innocents at play. Instead, the record conveys an impression of the principals as tough-minded, sophisticated businessmen accustomed to taking care of their interests. Unfortunately for the debtor corporations and the general creditors, on the cold record before us, the trustee has not shown that the transferor-transferee sophisticates in this case executed a sale that was a voidable preference under section 67, sub. d(2), (a), (b), (c), and (d), or under section 70, sub. e(1) of the Bankruptcy Act.
 
 
 28
 The decision of the district court has to be affirmed under the clearly erroneous rule.
 
 
 
 [1]
 After the sale of the building, which was the sole asset of Five Flags Building, Inc., and the disbursement of the proceeds of said sale, the following debts were due and remain unpaid:
 National American Bank, $556,167.34; Unsecured creditors, $25,836.79;
 Assessment for Federal Taxes, $656,424.00;
 Assessment for Interest and Penalties on Federal Taxes, $196,927.20
 
 
 [2]
 Although the district court made no finding on this specific point, the record indicates that the Bank's loan was secured in part by a pledge of all the outstanding common stock of Five Flags. The third mortgage executed in favor of the Bank was intended to prevent the debtor corporation from diluting the value of the stock by insuring that no additional prior liens could be placed on the 225 Baronne Street Building, Five Flags' sole asset
 
 
 [3]
 The trustee's appeal was originally joined in by the debtor corporations and their chief executive officers, C. Ellis Henican and Philip James. All appeals except the trustee's have since been voluntarily dismissed
 
 
 [4]
 Section 67, sub. d(2), 11 U.S.C. 107, sub. d(2), provides:
 (2) Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this title by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent; or (b) as to then existing creditors and as to other persons who become creditors during the continuance of a business or transaction, if made or incurred without fair consideration by a debtor who is engaged or is about to engage in such business or transaction, for which the property remaining in his hands is an unreasonably small capital, without regard to his actual intent; or (c) as to then existing and future creditors, if made or incurred without fair consideration by a debtor who intends to incur or believes that he will incur debts beyond his ability to pay as they mature; or (d) as to then existing and future creditors, if made or incurred with actual intent as distinguished from intent presumed in law, to hinder, delay or defraud either existing or future creditors.
 
 
 [5]
 Whether fair consideration has been given for a transfer must depend on all the circumstances of the case. . . . Fairness in every case is largely a question of fact, as to which considerable latitude must be allowed to the trier of the facts
 
 
 [4]
 Collier on Bankruptcy p 67.33 (J. Moore ed. 1967), p. 508. See Roth v. Fabrikant Bros., Inc., 2 Cir. 1949, 175 F.2d 665
 
 
 [6]
 These articles are part of Louisiana's revocatory action. See generally, La.Civ.Code arts. 1963-1989; Comment, The Revocatory Action, 9 Tulane L.Rev. 422, 436 (1935); Slovenko, Treatise on Creditors' Rights under Louisiana Civil Law 215, 923 (1968)