PHILLIPS, Senior Circuit Judge.
This bankruptcy case involves a payment of $45,000 on an indebtedness owed by the bankrupt-to-be to International Business Machines Corporation (IBM). The payment was made almost a year before the debtor was adjudged a bankrupt. IBM accepted the payment from Automated Business Systems, Inc. (ABS), the bankrupt-to-be, with *201 no intent to defraud creditors and with no knowledge that bankruptcy might be imminent. There is no contention that the payment was for less than a fair consideration. The bankruptcy judge found, however, that there was evidence to support the theory that ABS made the payment to IBM with the intent to hinder and delay creditors and with the legal effect of intent to defraud.
The primary issue raised on appeal is whether a transferee who, with no intent to defraud creditors and no knowledge of such fraud, accepts payment from a transferor who does intend to defraud creditors, must return that payment to the bankrupt’s estate under § 67(d)(2)(d) of the Bankruptcy Act (11 U.S.C. § 107(d)(2)(d)). The Bankruptcy Court held that the transferee, IBM, did not have to return the payment, and the District Court affirmed. We affirm the District Court.
Since the challenged transfer occurred in 1974 and the petition for bankruptcy was filed in 1975, this case is controlled by the Bankruptcy Act as it existed prior to the 1978 revision.
I
The present action was filed January 10, 1977, by William B. Tanner, Ins. (Tanner), a creditor of ABS, seeking to require IBM to return the $45,000 to the bankrupt estate. Tanner and two other creditors had filed in the Western District of Tennessee, on August 6, 1975, an involuntary petition for bankruptcy against ABS, which was adjudged bankrupt. The estate was depleted and the claims of a number of creditors were left unsatisfied. Tanner made a formal request that the trustee in bankruptcy file suit to set aside and recover the $45,000 payment made by ABS to IBM almost a year prior to bankruptcy. In a letter dated September 10, 1976, the trustee advised Tanner that the estate had no funds, and that the trustee declined to file an action unless the unsecured creditors would agree to share litigation expenses. Tanner thereupon filed in the Bankruptcy Court a “complaint or, alternatively petition for order compeling trustee to bring suit.” Bankruptcy Judge William B. Leffler overruled IBM’s motion to dismiss the complaint.
II
An initial question is whether appellant Tanner, rather than the trustee in bankruptcy, could bring an action in its name to set aside or rescind an alleged fraudulent transfer. Appellant’s complaint sought to set aside the transfer or, alternatively, petitioned for an order to compel the trustee to bring this action.
Generally if a trustee in bankruptcy defaults in the performance of any duty, such as seeking to set aside a fraudulent transfer, “the court may upon application direct him in his duty or, if he be recalcitrant, remove him for disobedience, or permit a creditor to act in his name.” 2A Collier on Bankruptcy ¶ 47.03, at 1744.1 (14th ed. 1978). See also 3A Collier on Bankruptcy ¶ 64.104, at 2085-86 (14th ed. 1978); 4B Collier on Bankruptcy ¶ 70.92 at 1055 (14th ed. 1978).
The Bankruptcy Judge ruled as follows on IBM’s motion to dismiss:
Defendant’s first contention in support of its Motion to Dismiss is that the plaintiff has no standing to bring the complaint in this Court in that the plaintiff is not the trustee. Although a trustee’s right to set aside a fraudulent transfer is not assignable, 4 Collier’s § 67.48(3), a creditor who believes a suit should be commenced has the right to petition the Bankruptcy Court to compel the trustee to act, or for leave to prosecute the suit in the interests of the estate. 4A Collier’s § 70.92. In the instant case the trustee has not undertaken to file the suit because of the lack of any monies with which to carry out the suit. Since the trustee is unable to pursue the suggested suit the creditor has a right to proceed on behalf of the estate.
We hold that the Bankruptcy Judge did not err in overruling the motion to dismiss the complaint and in permitting Tanner to proceed with this action.
*202 Gochenour v. Cleveland Terminals Bldg. Co., 118 F.2d 89 (6th Cir. 1941), concerned a bankruptcy reorganization under § 77B of the Bankruptcy Act (11 U.S.C. § 207), and has no application here. The compelling reasons behind permitting only the trustee or receivor to bring suit to recover property in a reorganization proceeding have less weight in a liquidation proceeding where no funds remain to divide among creditors or to finance a suit to set aside a fraudulent conveyance. See 4 Collier on Bankruptcy ¶ 67.48, at 683 (14th ed. 1978).
Ill
ABS, the bankrupt, was in the business of selling data processing services. It had extensive dealings with both IBM and Tanner. ABS had purchased computer services from IBM for several years prior to 1974, doing about $350,000 business. In 1974 its account with IBM fell in arrears in the amount of $100,000. ABS gave IBM a check in payment on the account, which was returned marked “insufficient funds.” IBM notified ABS that if IBM was not given a cashier’s check for the full account by August 7, 1974, IBM would remove its equipment, thus preventing ABS from continuing operations.
ABS also had extensive business dealings with Tanner during this same period. Besides providing data processing services to Tanner, ABS rented office space from Tanner at $3,500 per month. By October 1974 the rent was in arrears, and a check to Tanner for $19,000 past due rent had been returned.
In August 1974, ABS obtained a $45,000 loan from Tanner, representing that better service could be offered to Tanner if ABS purchased Accounts Receivable Management Services, Inc. Tanner agreed that the purchase would be beneficial to both, and loaned $45,000 to ABS on August 7,1974, to purchase Accounts Receivable. Instead of using the money to make the purchase, ABS obtained a cashier’s check for $45,000 and delivered it to IBM as payment on its account. To assure repayment of the loan, Tanner later acquired some security, including a second mortgage on the home of the president of ABS, which was never recorded and eventually proved to be worthless.
When IBM accepted the payment, it had no knowledge of the fraud perpetrated by ABS on Tanner. Because of this payment, IBM continued to provide ABS with equipment for two and a half more months, with the debt to IBM increasing from $55,000 to $129,000. Without this additional credit, ABS could not have continued in business for this additional period of time. When IBM finally decided to remove its equipment, it apparently was unaware of the insolvency of ABS.
The Bankruptcy Judge found that the filing of the involuntary bankruptcy petition “lacked one day of being one year” after the bankrupt accepted $45,000 from Tanner; that ABS made the payment to IBM “in order to keep open and remain in business”; and that “ABS perpetrated fraud” in its dealings with Tanner, “but IBM was not privey to this transaction.”
Tanner contends that § 107(d)(2)(d) permits a transfer to be set aside if either the bankrupt-transferor or the transferee intended to delay, hinder, or defraud creditors. Under this interpretation, even though the transferee accepts payment or property without any knowledge of the transferor’s intent or plan to defraud existing creditors, if the bankrupt-transferor had such fraudulent intent the transferee would be required to return the payment or property to the bankrupt’s estate. Such an interpretation is contrary to the holding of this court in General Kontrolar Co. v. Allen, 124 F.2d 123 (6th Cir. 1942), and must be rejected.
The challenged conveyance in General Kontrolar involved an assignment of patents from the bankrupt-assignor to a creditor-assignee. The assignee had loaned money to the bankrupt, and later the patents were assigned as repayment of the loan. The president of the bankrupt corporation had misled other creditors as to the state of title of the patents, and was found to have intended to hinder, delay, or defraud creditors in assigning the patents. Id. at 125-6. *203 The creditor-assignee, however, had no knowledge of the bankrupt’s intent and did not participate in any way in its plan or design. Rather, the creditor-assignee “was making a diligent effort to collect her money.” Id. at 125. For the assignment to be set aside, General Kontrolar found it necessary “for the creditor to prove actual fraud or collusion on the part of the assignee.” Id. at 126. See also Nicklaus v. Peoples Bank & Trust Co., 258 F.Supp. 482, 485-6 (E.D.Ark.1965), aff. 369 F.2d 683 (8th Cir. 1966).
Like the creditor assignee in General Kontrolar, supra, IBM in the present case was merely making a diligent effort to collect the past due indebtedness on the ABS account. IBM accepted the payment on the antecedent debt in good faith, neither knowing of nor participating in the scheme of ABS to defraud appellant Tanner. Strong evidence of IBM’s ignorance of the financial condition of ABS was its later extension to ABS of an additional $74,000 in credit over a two and a half month period, increasing the total unsatisfied debt to IBM to $129,000. Although appellant Tanner demonstrated and the Bankruptcy Court found that ABS made the payment to IBM with the intent to defraud creditors, the transfer may not be set aside under § 107(d)(2)(d) since appellant failed to prove actual fraud or collusion on the part of IBM.
Appellant’s reliance on In Re Southern Land Title Corp., 474 F.2d 1033 (5th Cir. 1973) is misplaced. That case involved the added element of the transferee’s domination or control of the disposition of the transferor’s property. In Southern Land Title the trustee alleged that the officers of the bankrupt were dominated by the president of the transferee corporation, and certain directors of the bankrupt were officers of another corporation controlled by the president of the transferee corporation. The Fifth Circuit stated the intent of both the bankrupt and the transferee must be examined. Citing 4 Collier on Bankruptcy ¶ 67.37, it held “fraudulent intent on the part of either party enables the trustee to avoid the transfer.” 474 F.2d at 1038. 4 Collier on Bankruptcy ¶ 67.37 at 534 (14th ed. 1978) states the following:
Where the transferee or obligee is in a position to dominate or control the bankrupt’s disposition of his property, however, his intent to hinder, delay, or defraud creditors would seem sufficient to render the transfer or obligation fraudulent within § 67d(2)(d) without respect to the purpose of the bankrupt transferor.
Thus Southern Land Title was concerned only with fraudulent intent on the part of either party where the transferee, as was alleged in Southern Land, is in a position to dominate or control the bankrupt.
In the present case the Bankruptcy Court specifically found that IBM was not in a position to dominate or control the disposition of the bankrupt’s property. Appellant has not sought to challenge this finding. Accordingly, we conclude that Southern Land Title provides no support to Appellant’s claim that fraudulent intent on the part of either the transferor or transferee requires the transfer to be set aside.
The decision of the District Court upholding the Bankruptcy Court’s dismissal of Appellant’s complaint is affirmed. The costs of this appeal are assessed against William B. Tanner Co., Inc., the appellant.