104 F.3d 352
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Paul L. BANNER, Trustee, Plaintiff-Appellee,
v.
Saul D. KASSOW, Defendant-Appellant.
 No. 96-5040.
 United States Court of Appeals, Second Circuit.
 Nov. 22, 1996.
 
 Appeal from the United States District Court for the Southern District of New York (Parker, J.).
 
 
 1
 FOR APPELLANT: Saul D. Kassow, pro se.
 
 
 2
 FOR APPELLEE: Jonathan D. Deily, Deily, Testa & Dautel, Albany, NY.
 
 
 3
 S.D.N.Y.
 
 
 4
 AFFIRMED.
 
 
 5
 Before OAKES, McLAUGHLIN and CABRANES, Circuit Judges.
 
 
 6
 This cause came on to be heard on the transcript of record from the United States District Court for the Southern District of New York and was submitted.
 
 
 7
 ON CONSIDERATION WHEREOF, it is hereby ordered, adjudged, and decreed that the judgment of the district court be and it hereby is AFFIRMED.
 
 
 8
 Kenneth Miccio owned a vacant tract of land (the "Lot") in Fishkill, New York. At a time when he was significantly in debt to various parties, Miccio began negotiations to sell the Lot for commercial development. During the course of these negotiations, Miccio became aware that the United States Internal Revenue Service ("IRS"), which held a tax lien on the Lot, was considering a foreclosure and sale.
 
 
 9
 On December 7, 1992, Miccio had his attorney, Saul Kassow, set up the Nine & Elm Development Corporation ("Nine & Elm") for the sole purpose of selling Miccio's Lot. All stock in Nine & Elm was issued to Miccio (but the corporation owned no assets and transacted no business). On February 24, 1993, Miccio executed a deed transferring title in the Lot to Nine & Elm. Kassow recorded the deed with the Dutchess County Clerk two weeks later.
 
 
 10
 On March 24, 1993, Miccio filed a personal bankruptcy petition in the United States Bankruptcy Court for the Southern District of New York (Jeremiah E. Berk, Bankruptcy Judge ). Then, on February 17, 1994, Nine & Elm sold the Lot to T.J.M. & Associates for $410,000. Miccio disbursed the cash proceeds of the sale to some of his personal creditors, including full payment to all mortgagees, full payment to the IRS, and $15,000 to Kassow, his attorney. However, many of Miccio's other personal creditors--such as Miccio's ex-wife, to whom he owed $270,000--received none of the proceeds.
 
 
 11
 The bankruptcy code provides that a trustee may "avoid any transfer" by the debtor made "within one year before the date of the filing of the petition," where the debtor made such transfer "with actual intent to hinder, delay, or defraud" a creditor. 11 U.S.C. § 548(a)(1). The trustee may recover the transferred property (or its value) not only from the initial transferee, see 11 U.S.C. § 550(a)(1), but also from "any immediate or mediate transferee of such initial transferee," 11 U.S.C. § 550(a)(2). However:
 
 
 12
 [t]he trustee may not recover under section (a)(2) ... from ... a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or ... any immediate or mediate good faith transferee of such transferee.
 
 
 13
 11 U.S.C. § 550(b) (emphasis added).
 
 
 14
 The trustee of Miccio's bankruptcy estate, Paul Banner, filed an adversary proceeding in bankruptcy court, alleging that Miccio's pre-petition transfer of the Lot to Nine & Elm was fraudulent under § 548(a)(1), and seeking to recover the proceeds of Nine & Elm's eventual sale of that property from Kassow and others pursuant to § 550(a)(2).
 
 
 15
 After a trial, the bankruptcy court found that: (1) the transfer of the Lot by Miccio to Nine & Elm "was made with the actual intent to hinder or delay the [IRS] ... in the enforcement of its rights against [Miccio's] property;" and (2) "Kassow knew of the fraudulent nature of the conveyance" of the Lot. The court ordered Kassow to repay the $15,000 to the estate.
 
 
 16
 Kassow appealed to the United States District Court for the Southern District of New York (Barrington D. Parker, Jr., Judge ); the district court affirmed. Kassow now appeals to this Court, again arguing that the bankruptcy court erred in ordering him to return the $15,000 to Miccio's estate. Specifically, Kassow asserts that Miccio's transfer of the Lot to Nine & Elm was not fraudulent, and that, in any event, he received the proceeds of the sale of the Lot in good faith and without knowledge of the fraud.
 
 
 17
 We review the bankruptcy court's factual findings only for clear error. State Bank of India v. Chalasani (In re Chalasani), 92 F.3d 1300, 1306 (2d Cir.1996); Lawson v. Ford Motor Co. (In re Roblin Indus., Inc.), 78 F.3d 30, 33 (2d Cir.1996). Among these questions of fact are whether a party had an actual fraudulent intent, see Equitable Bank v. Miller (In re Miller), 39 F.3d 301, 307 (11th Cir.1994); Acequia, Inc. v. Clinton (In re Acequia, Inc.), 34 F.3d 800, 805 (9th Cir.1994), and whether a party acted in good faith and without knowledge of fraud, Brown v. Third Nat'l Bank (In re Sherman), 67 F.3d 1348, 1355 (8th Cir.1995); In re Southern Land Title Corp., 474 F.2d 1033, 1037 (5th Cir.1973).
 
 
 18
 1. Miccio's Fraudulent Intent. The evidence supports the bankruptcy court's finding that Miccio had an actual fraudulent intent. Intent to defraud under § 548(a)(1) may be proven by either direct or circumstantial evidence. See Brown, 67 F.3d at 1353; Hayes v. Palm Seedlings Partners-A (In re Agric. Research and Tech. Group, Inc.), 916 F.2d 528, 534-35 (9th Cir.1990). Circumstances typically viewed as "badges of fraud" include:
 
 
 19
 [C]oncealment of facts and false pretenses by the transferror, reservation by him of rights in the transferred property, his absconding with or secreting the proceeds of the transfer immediately after their receipt, the existence of an unconscionable discrepancy between the value of the property transferred and the consideration received therefor ... [and] the creation by an oppressed debtor of a closely-held corporation to receive the transfer of his property.
 
 
 20
 Salomon v. Kaiser (In re Kaiser), 722 F.2d 1574, 1582 (2d Cir.1983) (quoting 4 Collier on Bankruptcy p 548.02 at 548-34 to 38 (15th ed.1983)).
 
 
 21
 When asked by the trustee, Banner, at an examination pursuant to Fed. R. Bankr.P.2004, why he transferred title of the Lot to Nine & Elm, Miccio candidly stated (under oath) that:
 
 
 22
 The [IRS] was going to seize the property and sell it right in the middle of this negotiation for sale. I only owed them 40,000 plus the bank, and they said they would sell it for the bank and their money, so we incorporated and sold it for 400,000 so I could pay off all my creditors.
 
 
 23
 This direct evidence of intent to hinder a creditor was accompanied by other inculpating circumstances. Miccio was the sole shareholder in Nine & Elm; Nine & Elm transacted no business other than the further sale of the Lot; Miccio was in financial trouble when he transferred the Lot to Nine & Elm, and the transfer removed a significant tangible asset from Miccio's personal estate; and Miccio kept control over the property after the transfer, including dispersing the proceeds of the sale to his personal creditors immediately after the lot was sold.
 
 
 24
 Based upon this evidence, the bankruptcy court did not clearly err in finding that Miccio transferred the Lot to Nine & Elm with actual fraudulent intent, and in permitting Banner to set aside this transfer under § 548(a)(1).
 
 
 25
 2. Kassow's Lack of Good Faith and Knowledge of the Fraud. The evidence also supports the bankruptcy court's finding that Kassow did not accept the $15,000 in good faith and without knowledge of Miccio's fraud. "[A] transferee does not act in good faith when he has sufficient knowledge to place him on inquiry notice of the debtor's possible insolvency." Brown, 67 F.3d at 1355. And, "[i]f a transferee possesses knowledge of facts that suggest a transfer may be fraudulent," he has sufficient knowledge to preclude his incantation of § 550(b)'s defense. Id. at 1357; see also Bonded Fin. Servs., Inc. v. European Am. Bank, 838 F.2d 890, 897-98 (7th Cir.1988).
 
 
 26
 Kassow undoubtedly knew of Miccio's dire financial straits. Kassow had been Miccio's personal attorney for close to twenty years. When the IRS hinted at foreclosure on the Lot, Miccio turned to Kassow for advice. And, at the same time that Miccio and Kassow discussed the creation of Nine & Elm (in December, 1992), Kassow advised Miccio to file for personal bankruptcy. Furthermore, it is obvious that Kassow was aware of sufficient facts to know of the voidability of Miccio's transfer of the Lot to Nine & Elm--indeed, Kassow set up the whole scheme. See Brown, 67 F.3d at 1357 (discussing transferee's knowledge of details of the avoidable transfer as precluding a § 550(b) defense).
 
 
 27
 Based upon this evidence, the bankruptcy court did not clearly err in finding that Kassow did not accept the $15,000 in good faith and without knowledge of the fraud, and in ordering Kassow to return the money to Miccio's bankruptcy estate under § 550(a)(2).
 
 
 28
 Kassow also argues that the bankruptcy court improperly restricted his cross-examination of Banner at trial, and that the district court then applied the wrong standard of review on appeal. We have considered these and all additional arguments raised by Kassow, and find them to be without merit.
 
 
 29
 Accordingly, the decision of the district court is AFFIRMED.